# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case #06-80391-CIV-RYSKAMP\VITUNAC

Shawn Brown, et al.

        Plaintiffs

vs.

General Nutrition Companies, Inc.

        Defendant.            /

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF NOTICE OF REMOVAL AND MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF NEW YORK

General Nutrition Companies, Inc. ("GNC") hereby files this supplemental memorandum in support of GNC's *Notice of Removal* and *Motion to Transfer Venue to the Southern District of New York*.

1. As the Court is aware, this lawsuit is one of six nearly identical class action lawsuits (collectively, the "Andro Actions") commenced by plaintiffs in different states against GNC for selling products manufactured by, among others, MuscleTech Research and Development, Inc. and its affiliates ("MuscleTech"). Each lawsuit alleges the same basic facts, presents the same basic legal issues, and each putative (although not yet certified) class is represented by the same law firms representing Plaintiffs in this proceeding.

2. On September 22, 2006, Judge Mary L. Cooper, United States District Judge for the District of New Jersey, denied plaintiffs' motion to remand the Andro Action pending in New Jersey (and removed to the District of New Jersey) and granted GNC's motion to transfer that Andro Action to the Southern District of New York. A copy of Judge Cooper's *Order and*

*Judgment* is attached hereto as Exhibit A, and a copy of the accompanying *Memorandum Opinion* is attached hereto as Exhibit B.

      3.     Of the six pending Andro Actions, therefore, two (New York and New Jersey) are now before Judge Rakoff in New York, and three (Illinois, Florida and Pennsylvania) are still awaiting ruling on the outstanding venue transfer and competing remand motions.

      4.     The sixth Andro Action (California) was remanded to state court; however, plaintiffs conceded (indeed, affirmatively argued) in California that the facts of that Andro Action are unique among the Andro Actions.  In particular, the plaintiffs identified a recent amendment to California state law that could impact class action litigation, and the California court noted that the California Andro Action had been pending only half as long as this Andro Action and was already administratively consolidated with other pending actions in the Los Angeles Superior Court (thereby negating in part the benefits of consolidation in New York). None of those distinguishing facts are present in this case.

      5.     With two Andro Actions now consolidated before Judge Rakoff, the benefits of transferring the Andro Actions to New York are no longer merely potential — they are *actual* benefits now accruing to MuscleTech, GNC, plaintiffs and even the judiciary as the Andro Actions now consolidate and proceed in New York.  As recognized by Judge Cooper in the attached *Memorandum Opinion*, transfer of the Andro Actions to New York will promote judicial efficiency and provide an efficient, economical and uniform resolution of these related lawsuits.

      ACCORDINGLY, for the reasons set forth in the *Memorandum Opinion* and in GNC's earlier pleadings, GNC requests that the Court deny Plaintiffs' motion to remand this action and grant such other and further relief as the Court may deem just and proper.

2

Dated: September *27*, 2006

Respectfully submitted,

By: *Kristin Drioux Fla Bar No 0672181*

Elizabeth L. Bevington
Holland & Knight LLP
315 South Calhoun Street Suite 600
Tallahassee, FL 32301
Telephone: (850) 425-5606
Facsimile: (850) 224-8832

James G. Munisteri
Michael P. Cooley
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone: 214.999.4824

Attorneys for Defendant
GENERAL NUTRITION COMPANIES, INC.

DALLAS 1707788v2

## CERTIFICATE OF SERVICE

I hereby certify that, on September 21, 2006, a true and correct copy of the above and foregoing document was mailed, postage prepaid, to the following counsel of record:

John Goldsmith
Trenam, Kernker, Scharf, Barkin, Frye,
O'Neill & Mullis, P.A.
2700 Bank of America Plaza
101 East Kennedy Boulevard
P.O. Box 1102
Tampa, Florida 33602
E-mail: jdgoldsmith@trenam.com

Paul B. Thanasides
Seth Zalkin
Thanasides, Zalkin & Acero
303 Park Avenue South, Suite 1104
New York, New York 10010
E-mail: thanasides@tzalaw.com
E-mail: zalkin@tzalaw.com

Elizabeth Bevington
Counsel to General Nutrition Companies, Inc.

DALLAS 1707788v2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EVERETT ABRAMS | : | CIVIL ACTION NO. 06-1820 (MLC) |
|  | : |  |
| Plaintiff, | : | **ORDER & JUDGMENT** |
|  | : |  |
| v. | : |  |
|  | : |  |
| GENERAL NUTRITION COMPANIES, | : |  |
| INC., | : |  |
|  | : |  |
| Defendant. | : |  |

For the reasons stated in the Court's memorandum opinion, **IT IS** on this      22nd      day of September, 2006, **ORDERED** that the motion to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1404, 1409, and 1412 (dkt. entry no. 2) is **GRANTED**; and

**IT IS FURTHER ORDERED** that the cross motion to remand this action to New Jersey Superior Court (dkt. entry no. 7) is **DENIED**; and

**IT IS FURTHER ADJUDGED** that the action be **TRANSFERRED** to the United States District Court for the Southern District of New York; and

**IT IS FURTHER ORDERED** that the Clerk of the Court designate this action as **CLOSED**.

                                        s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge



UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EVERETT ABRAMS | : | CIVIL ACTION NO. 06-1820 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| GENERAL NUTRITION COMPANIES, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | |

**COOPER, District Judge**

Plaintiff, Everett Abrams ("Abrams"), seeks to certify a
class and obtain damages on behalf of himself and others
similarly-situated who purchased certain nutritional supplements
from defendant, General Nutrition Companies, Inc. ("GNC"),
including supplements manufactured and distributed by MuscleTech
Research and Development, Inc. and its affiliated entities
("MuscleTech"). (GNC Transfer Br., at 4.) GNC moves to transfer
this action to the United States District Court for the Southern
District of New York pursuant to 28 U.S.C. §§ ("Sections") 1404,
1409, and 1412. (Dkt. entry no. 2.) Abrams, however, cross-
moves to remand this action to the New Jersey Superior Court (the
"state court") from which it was removed. (Dkt. entry no. 7.)
For the reasons stated herein, the Court will (1) grant the
motion to transfer, and (2) deny the cross motion to remand.



**BACKGROUND**

Abrams commenced this action against GNC in the state court on December 20, 2002. (GNC Transfer Br., at 2.) Abrams alleges that GNC marketed and sold products containing one or more steroid hormones ("Steroid Hormone Products"), including products manufactured by MuscleTech, which were deceptively marketed as effective to promote muscle growth. (Marks Decl., Ex. 1, at ¶ 31.) Abrams further alleges that GNC knew the Steroid Hormone Products did not produce the desired effect of increasing muscle growth and strength, and that if they did produce such desired effect they would be illegal anabolic steroids, but continued to sell them to consumers without providing any qualifying information. (Id. at ¶¶ 40-42.) Abrams contends that GNC's misrepresentations, omissions and deceptive trade practices constitute violations of the New Jersey Consumer Fraud Act, and thus, Abrams and those similarly situated are entitled to actual and treble damages, as well as attorneys' fees and costs. (Id. at ¶¶ 61-69.) The original complaint named the manufacturers of the Steroid Hormone Products, including MuscleTech, as defendants, but the state court granted GNC's motion to sever the claims against it. (Abrams Br., at ¶ 1.)

The purchase order form GNC used to purchase MuscleTech products for sale in its stores contains an indemnity clause. (GNC Transfer Br., at 2.) The indemnity clause provides:

2

> The Seller agrees to indemnify the Buyer from and
> against all liability, loss and damage including
> reasonable counsel's fees resulting from the sale or
> use of the products or any litigation based thereon,
> and such indemnity shall survive acceptance of the
> goods and payment therefore by the Buyer.

(GNC Remand Br., Ex. A, at ¶ 12.)  Accordingly, GNC asserts that

MuscleTech is obligated to indemnify it for any liability it

incurs in connection with this action.  (GNC Transfer Br., at 2.)

MuscleTech filed a petition on January 18, 2006 under

chapter 15 of the United States Bankruptcy Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Southern

District of New York.  (Id. at 3.)  Simultaneously, MuscleTech

commenced a proceeding under Canada's Companies' Creditors

Arrangement Act in Canada's Superior Court of Justice (the "CCAA

proceeding").  (GNC Remand Br., at ¶ 4.)  The bankruptcy case was

subsequently removed to the United States District Court for the

Southern District of New York (the "bankruptcy case") and

assigned to Judge Jed S. Rakoff (case no. 06-538 (JSR)).  (GNC

Transfer Br., at 3.)  Also, on April 18, 2006, GNC removed this

action from the state court to this Court asserting that this

Court has jurisdiction over the matter because it is "related to"

MuscleTech's bankruptcy case.  (Id. at 2-3.)  During the four

years this action was pending in the state court, no class was

certified and discovery was not completed.  (GNC Remand Br., at ¶

29.)

Judge Rakoff issued an order in the bankruptcy case on
January 18, 2006, staying prosecution of any products liability
action against MuscleTech, GNC, and various other parties
currently defendants in actions that could indirectly affect the
MuscleTech bankruptcy case.  (GNC Remand Br., at ¶ 15.)  On March
2, 2006, Judge Rakoff issued an order clarifying the scope and
extent of the stay, and directed MuscleTech's counsel to file a
copy of that order in all products liability actions affected by
the order, including this action.  (Id. at ¶ 16; Marks Decl., Ex.
2.)  Judge Rakoff issued several additional orders further
extending the stay, most recently to November 10, 2006.  (Case
No. 06-538 (JSR), dkt entry no. 114).  Moreover, on March 3,
2006, the Canadian court in the CCAA proceeding issued an order
(the "Proof of Claim Order") directing all persons holding
products liability claims against "any of the Subject Parties" to
file proofs of claim with the monitor appointed there.  (GNC
Remand Br., at ¶ 12.)  The Proof of Claim Order defines "Subject
Parties" as including both MuscleTech and GNC.  (Id., Ex. B., at
7, Sch. A and Sch. C.)[1]

GNC now moves to transfer this action to the United States
District Court for the Southern District of New York arguing,
inter alia, that because this action is "related to" the

_____

[1] Although the terms of the Proof of Claim Order permitted
Abrams to do so, this Court is not aware of whether he filed a
proof of claim in the CCAA proceeding.

4

MuscleTech bankruptcy case, transfer to the district where the
bankruptcy case is pending would promote the interest of justice
and convenience of the parties. (Dkt. entry no. 2.) GNC also
filed motions seeking to transfer similar proceedings pending in
Pennsylvania, Illinois, California, and Florida to the Southern
District of New York. (GNC Transfer Br., at 4) According to
GNC, the plaintiffs in each of these actions (1) allege the same
basic facts, (2) assert the same legal arguments, and (3) are
represented by the same law firms, as Abrams. (GNC Remand Br.,
at ¶ 3.) Abrams, on the contrary, cross-moves to remand this
action to the state court asserting that this Court cannot
exercise jurisdiction. (Dkt. entry no. 7.)

## DISCUSSION

Abrams argues that this Court lacks bankruptcy jurisdiction
over this action because MuscleTech is not a party here and the
outcome will not affect the administration of MuscleTech's
bankruptcy estate. (Abrams Br., at ¶ 3.). Thus, Abrams argues
that this Court should remand this action to the state court due
to lack of jurisdiction, or abstain from hearing the matter.
(Id. at 1.) GNC contends that this Court can properly exercise
jurisdiction here because GNC's contractual right to be
indemnified by MuscleTech is sufficient to deem this action
"related to" MuscleTech's bankruptcy case. (GNC Remand Br., at ¶
6.) GNC further contends that because this action is "related

5

to" the bankruptcy case, it should be transferred to the Southern
District of New York.  (GNC Transfer Br., at 10.)

## I.    Mandatory Remand for Lack of Bankruptcy Jurisdiction

### A.    Legal Standards Governing Remand and Bankruptcy Jurisdiction

Section 1447(c) provides, "[i]f at any time before final
judgment it appears that the district court lacks subject matter
jurisdiction, the case shall be remanded. . . .  The State court
may thereupon proceed with such case."  28 U.S.C. § 1447(c).
When a motion for remand is filed, the removing party bears the
burden of establishing the elements of subject matter
jurisdiction.  Russ v. Unum Life Ins. Co., No. 06-1308, 2006 U.S.
Dist. LEXIS 50191, at *6 (D.N.J. July 11, 2006); see also Boyer
v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (noting
that "a party who urges jurisdiction on a federal court bears the
burden of proving that jurisdiction exists").  Further, the
removal statutes "are to be strictly construed against removal
and all doubts should be resolved in favor of remand."  Boyer,
913 F.2d at 111.

A party may remove an action "to the district court for the
district where such civil action is pending, if such district
court has jurisdiction of such claim or cause of action under
section 1334."  28 U.S.C. § 1452(a).  Section 1334 gives district
courts (1) original and exclusive jurisdiction of all cases
brought "under" a chapter of the Bankruptcy Code, (2) original

6

but not exclusive jurisdiction of all civil proceedings "arising under" the Bankruptcy Code, and (3) original but not exclusive jurisdiction of all proceedings "arising in" or "related to" cases under the Bankruptcy Code.  28 U.S.C. § 1334(a) & (b).[2] "Arising under" refers to proceedings expressly created by the Bankruptcy Code.  <u>Steel Workers Pension Trust v. Citigroup, Inc.</u>, 295 B.R. 747, 750 (E.D. Pa. 2003).  "Arising in" refers to proceedings involving the administration of the bankruptcy estate.  <u>Id.</u>  However, a "related to" proceeding is one that

---

[2] District courts may provide that all cases "under" the Bankruptcy Code and all proceedings "arising under", "arising in" or "related to" cases under the Bankruptcy Code must be referred to the bankruptcy judges for that district.  28 U.S.C. § 157(a). Proceedings "arising under" the Bankruptcy Code or "arising in" a Bankruptcy Code case are considered core proceedings because they invoke a substantive right provided by the Bankruptcy Code, or by their nature could arise only in the context of a bankruptcy case.  <u>Copelin v. Spirco, Inc.</u>, 182 F.3d 174, 180 (3d Cir. 1999); <u>see also</u> 28 U.S.C. § 157(b)(1).  Section 157 provides a non-exhaustive list of core proceedings.  28 U.S.C. § 157(b)(2). Proceedings that are only "related to" a bankruptcy case are considered noncore proceedings.  <u>Copelin</u>, 182 F.3d at 180. Bankruptcy courts can enter final judgments in core proceedings, subject to the district court's appellate review.  <u>In re Allegheny Health, Educ. & Research Found.</u>, 383 F.3d 169, 175 (3d Cir. 2004); <u>Copelin</u>, 182 F.3d at 179.  On the contrary, in a noncore proceeding a bankruptcy court can only issue proposed findings of fact and conclusions of law to the district court unless the parties consent to the case being referred to the bankruptcy court.  <u>In re Allegheny Health</u>, 383 F.3d at 175; <u>Copelin</u>, 182 F.3d at 179.  The issue here is whether a district court can properly exercise bankruptcy jurisdiction over this action.  Thus, the core/noncore distinction set forth in Section 157 and the case law interpreting Section 157 is not relevant. <u>See In re Allegheny Health</u>, 383 F.3d at 175 (explaining that whether a proceeding is core or noncore represents an entirely separate question from that of subject-matter jurisdiction).

exists outside of the bankruptcy process and does not invoke any substantive rights created by the Bankruptcy Code, but its outcome could conceivably affect the bankruptcy estate. Id.

The test for determining whether a federal court can exercise jurisdiction over a proceeding that is simply "related to" a bankruptcy case was originally set forth in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).[3]  In Pacor, John and Louise Higgins ("Higgins") commenced a Pennsylvania state court action against a chemical supplies distributor, Pacor, Inc. ("Pacor"), for damages caused by Mr. Higgins's work-related exposure to asbestos supplied by Pacor. Id. at 986.  Pacor impleaded the Johns-Manville Corporation ("Johns-Manville"), the original manufacturer of the asbestos. Id.  Thereafter, Johns-Manville filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. Id.  As a result, Pacor simultaneously (1) removed the state court action to the United States Bankruptcy Court for the Eastern District of Pennsylvania, and (2) moved to transfer the action to the Southern District of New York where it could be joined with the Johns-Manville bankruptcy case. Id.

---

[3] This case appears to be overruled in part on other grounds. See, e.g., In re Velocita Corp., 169 Fed.Appx. 712, 715 (3d Cir. 2005) (noting that Pacor was overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35 (1995)).  But see In re Federal-Mogul, Inc., 300 F.3d 368, 381 (3d Cir. 2002) (stating that "Pacor clearly remains good law in this circuit").

The Eastern District of Pennsylvania bankruptcy court determined that Pacor's removal petition was untimely, and thus, remanded the case to state court.  Id.  On appeal, the district court stated that Pacor's removal petition was not time-barred, but concluded that Higgins's claims against Pacor were not "related to" the Johns-Manville bankruptcy case.  Id.  Therefore, because the district court determined that the bankruptcy court did not have jurisdiction to address Higgins's claims against Pacor, it remanded that portion of the case to the state court.  Id.  Pacor appealed.  Id. at 987.

The Third Circuit, in addressing Pacor's appeal, stated, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."  Id. at 994.[4]  However, the court noted that a bankruptcy court's jurisdiction over "related to" cases is not unlimited.  Id.  The court stated that the test for determining whether "related to" jurisdiction exists is "whether the outcome of that proceeding could conceivably have any effect on the

---

[4] The Pacor court examined the predecessor to Section 1334(b), former Section 1471(b).  Id.  Former Section 1471(b) contained nearly identical language to Section 1334(b), except that it granted jurisdiction to bankruptcy courts rather than district courts over civil proceedings "arising under", or "arising in or related to" the Bankruptcy Code.  Thus, the Pacor analysis is applicable to jurisdictional questions under Section 1334(b).

estate being administered in bankruptcy." Id. The court
explained that a proceeding does not necessarily have to be
against the debtor or the debtor's property because "related to"
jurisdiction exists if the proceeding could alter the debtor's
rights or liabilities, or in any way impact the administration of
the bankruptcy estate. Id. The court concluded that the primary
action between Higgins and Pacor was not "related to" the Johns-
Manville bankruptcy case, and therefore, the bankruptcy court
could not exercise jurisdiction over that action. Id. at 995.
The court emphasized that even if the Higgins/Pacor dispute was
resolved in favor of Higgins, the Johns-Manville bankruptcy
estate would not be affected in any way until Pacor brought a
subsequent action seeking indemnification from Johns-Manville.
Id. The court distinguished those cases where "related to"
jurisdiction was founded upon the defendant having an explicit
indemnification agreement automatically creating liability for
the bankruptcy debtor. Id. Thus, because Higgins's action
against Pacor was not "related to" the Johns-Manville bankruptcy
case, the court affirmed the district court's order remanding the
action to state court. Id. at 996.

    The Third Circuit clarified the test it set forth in Pacor
in In re Federal-Mogul Global, Inc. 300 F.3d 368. In Federal-
Mogul, thousands of individuals commenced personal injury and
wrongful death actions in state courts against various

10

manufacturers and distributors of friction products containing
asbestos, including Federal-Mogul Global, Inc. ("Federal-Mogul"),
as well as companies that manufactured and sold products
containing these friction products. Id. at 372. After Federal-
Mogul and its affiliates and subsidiaries filed chapter 11
bankruptcy petitions, the plaintiffs began severing or dismissing
their claims against them. Id. at 372-73. Many of the remaining
defendants removed the actions against them to the appropriate
federal district court pursuant to Section 1452(a), arguing that
these actions were "related to" Federal-Mogul's bankruptcy case.
Id. at 373. Specifically, the defendants argued that they would
be entitled to seek indemnification or contribution from Federal-
Mogul if they were found liable because they had purchased some
of the friction products at issue in their respective actions
from Federal-Mogul. Id. The plaintiffs moved for remand in each
of these actions. Id. at 373. While the motions were pending,
many of these cases were transferred to the District of Delaware,
which concluded that it lacked jurisdiction, and thus, remanded
the cases to the state courts where they were originally
commenced. Id. at 373-76. The defendants appealed the Delaware
district court's order. Id. at 376.

The Third Circuit noted, in addressing the appeal, that
"Pacor clearly remains good law in this circuit." Id. at 381.
The court further noted that the Supreme Court had both endorsed

11

the Pacor test and acknowledged that nearly all of the courts of
appeals have adopted it with little or no variation with the
exception of the Second and Seventh Circuits, which adopted
slightly different tests.  Id. (citing Celotex Corp. v. Edwards,
514 U.S. 300, 308-09 (1995)).  The court then stated, "[t]he test
articulated in Pacor for whether a lawsuit could 'conceivably'
have an effect on the bankruptcy proceeding inquires whether the
allegedly related lawsuit would affect the bankruptcy proceeding
without the intervention of yet another lawsuit."  Id. at 382.
Thus, the court established that a right to indemnification from
a bankruptcy debtor does not necessarily create "related to"
bankruptcy jurisdiction.  Id.; see also Steel Workers Pension
Trust, 295 B.R. at 750 ("An indemnification agreement between a
defendant and a non-party bankrupt debtor does not automatically
supply the nexus necessary for the exercise of 'related to'
jurisdiction.  Only when the right to indemnification is clearly
established and accrues upon the filing of the civil action is
the proceeding related to the bankruptcy case.")  Therefore,
because any indemnification claims the defendants in the personal
injury and wrongful death actions might have against Federal-
Mogul had not yet accrued and would require additional actions,
the court concluded that it could not exercise "related to"
jurisdiction over those cases.  Id.

        Pacor established that not all indemnification agreements
between a defendant in a personal injury or products liability

action and a non-party bankruptcy debtor create a basis for a
federal district court to exercise "related to" bankruptcy
jurisdiction over a matter pursuant to Section 1334(b).  <u>Steel</u>
<u>Workers Pension Trust</u>, 295 B.R. at 753.  The right to
indemnification must accrue upon the bringing of the civil action
for it to be considered "related to" the bankruptcy case.  <u>Id.</u> at
750.  Thus, a proceeding is sufficiently "related to" a
bankruptcy case to establish jurisdiction when a party's right to
indemnification from the bankruptcy debtor is express and is not
contingent on the commencement of a separate action requiring
additional fact-finding.  <u>Id.</u> at 753; <u>see also</u> <u>In re Combustion</u>
<u>Engr., Inc.</u>, 391 F.3d 190, 232 (3d Cir. 2004) (concluding that
"any indemnification claims against [the debtor] resulting from a
shared production facility would require the intervention of
another lawsuit to affect the bankruptcy estate, and thus cannot
provide a basis for 'related to' jurisdiction"); <u>In re Allegheny</u>
<u>Health</u>, 383 F.3d at 176 n.7 (finding that "related to" bankruptcy
jurisdiction existed over action by party seeking indemnity from
a bankruptcy debtor because the indemnity claim had already
matured).

    **B.    Federal Bankruptcy Jurisdiction Here**

    This Court has "related to" bankruptcy jurisdiction
over this action under the test articulated in <u>Pacor</u>.  MuscleTech
contractually agreed to indemnify GNC for "all liability, loss

and damage including reasonable counsel's fees resulting from the
sale or use of the [MuscleTech] products." (GNC Remand Br., Ex.
A, at ¶ 12.) This language automatically creates liability for
the MuscleTech bankruptcy estate if Abrams prevails in his claims
against GNC. Unlike in Pacor, there would be no need for a
subsequent action seeking indemnification against MuscleTech
before the bankruptcy estate would be affected. Therefore, this
action is sufficiently "related to" the MuscleTech bankruptcy
case to establish jurisdiction because GNC's right to
indemnification from MuscleTech is not contingent upon the filing
of an additional complaint, and thus, this action will affect the
MuscleTech bankruptcy case if Abrams succeeds in proving his
claims.

        The orders Judge Rakoff issued staying prosecution of any
products liability action against MuscleTech, GNC, and various
other parties also indicate that resolution of this action and
the other products liability actions against GNC currently
pending in other jurisdictions will directly affect the
MuscleTech bankruptcy case. (See GNC Remand Br., at ¶ 15.)
Because MuscleTech is not a named defendant in these actions, the
only plausible basis for staying the products liability actions
against GNC is that any recovery the plaintiffs obtain against
GNC will automatically increase MuscleTech's liabilities and
reduce the amount available for distribution to MuscleTech's

creditors.  If it was necessary for GNC to bring separate actions seeking indemnity from MuscleTech, then it would be appropriate only for Judge Rakoff to stay those actions rather than the initial proceedings against GNC.  Further, the Proof of Claim Order issued in the CCAA proceeding directs all persons holding products liability claims against "any of the Subject Parties", which includes GNC, to file proofs of claim against MuscleTech. (GNC Remand Br., at ¶ 12.)  Accordingly, the Canadian court acknowledges that all parties that succeed in their products liability claims against GNC will indirectly receive payment on their claims from the MuscleTech bankruptcy estate in the same manner as creditors holding direct claims against MuscleTech or its affiliates.  Thus, Judge Rakoff's stay orders and the Proof of Claim Order reflect that resolution of this action could automatically impact MuscleTech's bankruptcy case.  Accordingly, this Court has "related to" bankruptcy jurisdiction over this action.

## II. Mandatory Abstention

Section 1334(c)(2) requires a district court to abstain if the action is (1) based on a state law claim or cause of action, (2) "related to" a case under the Bankruptcy Code, but does not "arise under" or "arise in" a case under the Bankruptcy

Code[5], (3) one where federal courts would not have jurisdiction apart from bankruptcy jurisdiction, (4) commenced in a state forum with appropriate jurisdiction, and (5) one that can be timely adjudicated in a state forum.  Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006).  "On its face [Section 1334] mandates abstention in removed cases as well as those filed initially in federal court."  Id.

Abrams's claims against GNC arise under the New Jersey Consumer Fraud Act, and thus, are based solely on state law. Abrams commenced this action in a New Jersey state court that could appropriately exercise jurisdiction over his claims.  Also, as discussed more fully above, this action is "related to" MuscleTech's bankruptcy case, but it does not "arise under" or "arise in" a case under the Bankruptcy Code.  Therefore, requirements one, two and four above are met.  However, the state court, by no fault of its own, was not able to timely adjudicate this action.  After nearly three and a half years, no class was certified and discovery was not complete.  (GNC Remand Br., at ¶ 29.)  Moreover, although neither party has addressed whether any independent basis for federal jurisdiction exists, it appears diversity jurisdiction would also provide a basis.  See 28 U.S.C.

---

[5] "Congress, by virtue of its use of the 'arising under' and 'arising in' language in section 1334(c)(2), incorporated the core/non-core distinction into the mandatory abstention test." Balcor/Morristown LP v. Vector Whippany Assoc., 181 B.R. 781, 790 (D.N.J. 1995).

§ 1332 (stating that district courts have jurisdiction over all actions involving citizens of different states where the amount in controversy exceeds $75,000).[6]  GNC is a Pennsylvania corporation with its principal place of business in Pittsburgh (Marks Decl., Ex. 1, at ¶ 6.)  Abrams, however, is a citizen of Burlington County, New Jersey.  (Marks Decl., Ex. 1, at ¶ 8.) Assuming the amount in controversy exceeds $75,000, which appears likely, it is plausible that this action could have been brought in federal court under Section 1332.  Therefore, the third and fifth requirements for mandatory abstention have not been met.

## III. Discretionary Abstention and Equitable Remand

Section 1334(c) provides:

[e]xcept with respect to a case under [chapter 15 of the Bankruptcy Code], nothing in this section prevents a district court in the interest of justice or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under . . . or arising in or related to a case under [the Bankruptcy Code].

28 U.S.C. § 1334(c)(1).  Thus, Section 1334(c)(1) gives this Court discretion to abstain from hearing an action that is "related to" a bankruptcy case.  See Jazz Photo Corp. v. Dreier

---

[6] This Court acknowledges that notice of removal of an action must be filed within thirty days of either service of the summons or the defendant's receipt of the complaint.  See 28 U.S.C. § 1446(a).  Thus, the time period for asserting removal of this action on the basis of Section 1332 has expired. Nevertheless, this Court will still consider whether jurisdiction under Section 1332 could have existed for purposes of determining whether mandatory abstention is appropriate.

17

LLP, No. 05-5198, 2005 U.S. Dist. LEXIS 36396, at *19-*20 (D.N.J. Dec. 23, 2005) (discussing permissive abstention provision of Section 1334 and listing factors for deciding whether to exercise discretionary abstention).  The only exception to this Court's ability to exercise discretionary abstention is that it cannot abstain from hearing a case "under" chapter 15 of the Bankruptcy Code.  28 U.S.C. § 1334(c)(1); 15 Collier on Bankruptcy ¶ 3.05[1] (15th ed. rev. 2006).  Although MuscleTech filed a chapter 15 bankruptcy petition, as discussed above, this action is only "related to", not "under" that bankruptcy case.  Accordingly, the chapter 15 exception to the discretionary abstention doctrine does not apply here.

A court to which a claim or cause of action is removed on the basis of bankruptcy jurisdiction "may remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b). Essentially the same considerations and standards are relevant in determining whether discretionary abstention under Section 1334(c) and equitable remand under Section 1452(b) are appropriate.  Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at *19; Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC), 304 B.R. 111, 126 (Bankr. D.N.J. 2003) (noting that the doctrines of discretionary abstention and equitable remand require a similar conclusion). There are a number of factors in deciding whether to exercise

18

discretionary abstention and equitable remand, including (1) the
effect on the administration of the bankruptcy estate, (2) the
extent to which state law issues predominate the action, (3) the
difficulty or unsettled nature of applicable state law, (4)
comity with state courts, (5) the action's degree of relatedness
to the main bankruptcy case, (6) the existence of a right to a
jury trial, and (7) prejudice to the involuntarily removed
parties.  Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at *20;
In re Mid-Atlantic Handling Sys., LLC, 304 B.R. at 126.  Both
discretionary abstention and equitable remand are only
appropriate to "a narrow sphere of cases."  Balcor/Morristown LP,
181 B.R. at 793.  The court will look to the "reality of the
controversy, rather than base [a] decision on superficial
features that appear to place it in one category or another."
Id. at 794.

    This action has a direct relation to the bankruptcy case.
If Abrams prevails against GNC, the judgment in his favor will
create automatic liability for MuscleTech's bankruptcy estate.
As previously discussed, GNC has an express contractual right to
indemnification from MuscleTech for all liability arising from
its sale of the MuscleTech products, which is not contingent and
does not require proof of any additional facts.  Thus, resolution
of this action is directly related to MuscleTech's bankruptcy
case and could directly affect administration of the bankruptcy
estate.

19

Although state law issues clearly predominate this action,
it does not involve any novel or difficult questions of state law
that would be inappropriate for a federal court to address.  See
Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at *20 (noting
that state law issues dominated the malpractice action but the
action did not involve any novel issues of state law); see also
Balcor/Morristown LP, 181 B.R. at 793 (stating that "[t]he fact
that a matter turns on state law cannot always control [because]
[b]ankruptcy courts routinely hear matters of state law").
Moreover, this action was pending in state court for nearly three
and a half years, yet no class was certified and discovery was
not completed.  (GNC Remand Br., at ¶ 29.)  Thus, there is no
indication that remand to state court would lead to a more
efficient and expeditious conclusion to this matter, or that
Abrams will be prejudiced if this action were to remain in
federal court.  Therefore, discretionary abstention or equitable
remand is not appropriate in this case.[7]

## IV.   Transfer

### A.   Transfer Standard

A "proceeding arising under [the Bankruptcy Code] or arising
in or related to a case under [the Bankruptcy Code] may be

---

[7] This Court acknowledges that Abrams's request for a jury
trial is one factor supporting remand.  However, this Court
concludes upon balancing the remaining factors, that permissive
abstention and equitable remand are not appropriate here.

commenced in the district court in which such case is pending."
28 U.S.C. § 1409(a).  A district court may "transfer a case or
proceeding under [the Bankruptcy Code] to a district court for
another district, in the interest of justice or for the
convenience of the parties."  28 U.S.C. § 1412.  Although Section
1412 speaks only of proceedings "under" the Bankruptcy Code, it
is also applicable for determining whether a proceeding "related
to" a bankruptcy case may be transferred.  Mar. Elec. Co., Inc.
v. United Jersey Bank, No. 90-6057, 1992 U.S. App. LEXIS 5144, at
*11-*12 (3d Cir. Mar. 24, 1992) (explaining that where a
proceeding becomes "related to" a subsequently filed bankruptcy
case, the proper method for transfer to the bankruptcy court is
to seek a change of venue in the nonbankruptcy forum pursuant to
Section 1412 first); A. B. Real Estate, Inc. v. Bruno's, Inc. (In
re Bruno's Inc.), 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998)
(concluding that Section 1412 governs transfer of "related to"
bankruptcy proceedings because its language refers to the
Bankruptcy Code while Section 1404 refers only to a "civil
action"); see also Howard Brown Co. v. Reliance Ins. Co., 66 B.R.
480, 482 (E.D. Pa. 1986) (transferring proceeding "related to" a
bankruptcy case pursuant to Section 1412).  More generally,
Section 1404(a) permits a district court "[f]or the convenience
of parties and witnesses, in the interest of justice" to transfer
an action to another district "where it might have been brought."

21

28 U.S.C. § 1404(a).  An action might have been brought in
another district, if (1) venue is proper in the transferee
district, and (2) the transferee district can exercise
jurisdiction over all the parties.  <u>Shutte v. Armco Steel Corp.</u>,
431 F.2d 22, 24 (3d Cir. 1970).  The movant bears the burden
under Section 1412 or Section 1404 of demonstrating that transfer
is warranted.  <u>HLI Creditor Trust v. Keller Rigging Constr., Inc.
(In re Hayes Lemmerz Int'l, Inc.)</u>, 312 B.R. 44, 46 (Bankr. D.
Del. 2004).  However, the final decision on whether to transfer
is committed to the district court's discretion.  <u>Larimi Ltd. v.
Yes! Entm't Corp.</u>, 244 B.R. 56, 61 (D.N.J. 2000).

The determination of whether to transfer venue under Section
1412 or Section 1404 requires the same analysis.  <u>In re Emerson
Radio Corp.</u>, 52 F.3d 50, 55 (3d Cir. 1995) ("[S]ection 1412
largely include[s] the same criteria for transfer of cases as
section 1404(a), i.e., 'the interest of justice' or the
'convenience of the parties,' yet [it does] not include the
limitation that a transfer may be made only to a district where
the action might have been brought."); <u>Hechinger Liquidation
Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.)</u>, 296 B.R.
323, 325 (Bankr. D. Del. 2003) ("A determination of whether to
transfer venue under § 1412 turns on the same issues as a
determination under § 1404(a).").  Additional factors to be
considered when addressing a motion to transfer are: (1) the

plaintiff's choice of forum; (2) the defendant's forum
preference; (3) whether the underlying claim arose elsewhere; (4)
the convenience of the parties based on their relative physical
and financial condition; (5) the convenience of witnesses; (6)
the location of books and records; (7) the enforceability of any
judgment obtained by the plaintiff; (8) practical considerations
that could make trial easy, expeditious, or inexpensive; (9)
administrative difficulty resulting from court congestion; (10)
local interest in deciding local controversies; (11) the public
policies of each forum; and (12) the familiarity of the trial
judge with applicable law.  <u>Larami Ltd.</u>, 244 B.R. at 61 (citing
<u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879-880 (3d Cir.
1995)); <u>In re Hechinger Inv. Co. of Del., Inc.</u>, 296 B.R. at 325.
Generally, the district where the bankruptcy case is pending is
the proper venue for all proceedings "related to" that bankruptcy
case.  <u>Howard Brown Co.</u>, 66 B.R. at 482.

### B. Transfer as Applied to this Case

Transfer of this action to the Southern District of New York
is appropriate.  Venue is proper there because: (1) that is the
district where the MuscleTech bankruptcy case is pending; and (2)
this action is "related to" that bankruptcy case.  See 28 U.S.C.
§ 1409(a); Howard Brown Co., 66 B.R. at 482.  Moreover, transfer
of this action to the Southern District of New York would be in
the interest of justice.  GNC's right to indemnification from

23

MuscleTech is express and in no way contingent upon the commencement of an additional action. Thus, any recovery Abrams obtains against GNC will automatically increase MuscleTech's liabilities and reduce the amount available for distribution to MuscleTech's creditors. The Proof of Claim Order issued in the CCAA proceeding, which directs all persons holding products liability claims against GNC to file proofs of claim in MuscleTech's bankruptcy case, supports the conclusion that this action will impact MuscleTech's bankruptcy estate. (GNC Remand Br., at ¶ 12.) Allowing the court in the Southern District of New York to handle all matters affecting the MuscleTech bankruptcy estate would ultimately promote the efficient administration of the bankruptcy estate, and thus, the interest of justice.

This Court also has already determined that this case will not be remanded to the state court, Abrams's chosen forum, and GNC seeks transfer to the Southern District of New York. Further, although Abrams's claims against GNC originated from GNC's marketing and sale of Steroid Hormone Products in New Jersey, GNC was engaging in the same allegedly unlawful acts and omissions across the United States; similar proceedings are currently pending in Pennsylvania, Illinois, California, and Florida. (GNC Remand Br., at ¶ 3.) Accordingly, the claims underlying this action did not arise exclusively in New Jersey.

24

Neither party has addressed whether court congestion in the Southern District of New York, strong local interest in deciding this matter, or any public policies of this district or the Southern District of New York weigh in favor of keeping this action in this district or transferring it.  The familiarity of the trial judge with applicable law also does not weigh heavily for or against transfer, as district courts often interpret and apply state law and this case does not involve any novel or difficult applications of state law.  Further, the close proximity of this Court to the Southern District of New York makes the location-of-books-and-records factor neutral, particularly because most of GNC's books and records will be located at its principal office in Pittsburgh, Pennsylvania.  See Larami Ltd., 244 B.R. at 62 (noting that due to the close proximity of the District of New Jersey to the Bankruptcy Court for the District of Delaware, factors four, five and six do not suggest a preference for either district).  Similarly, Abrams, a New Jersey resident, will not be significantly inconvenienced by transfer of this action to the Manhattan location of the Southern District of New York.

Practical considerations, however, indicate that transfer would make the resolution of this action more expeditious by eliminating any delays that would be caused by this Court needing to familiarize itself with the relevant facts and circumstances

25

surrounding the sale of Steroid Hormone Products.  Transfer of
this case to the district where MuscleTech's bankruptcy case is
pending would promote judicial efficiency by establishing one
forum where all claims arising from the sale of MuscleTech
products can be addressed.  It will also enable the same court
overseeing the MuscleTech bankruptcy case, which may already be
familiar with the facts and circumstances surrounding its Steroid
Hormone Products, to determine this action.  Also, although no
potential witnesses have been specifically identified by either
party, it is likely that officers and employees of MuscleTech,
the manufacturer of one of the steroid hormone products
underlying Abrams's claims, could be called to testify in this
matter.  It would be more convenient for such potential witnesses
if this action were pending in the same district where the
MuscleTech bankruptcy case is currently pending.  Therefore,
balancing the various factors, this Court finds that the Southern
District of New York is a more appropriate forum.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will (1) grant GNC's motion to transfer this action to the United States District Court for the Southern District of New York, and (2) deny Abrams's cross motion to remand this action to New Jersey Superior Court.  The Court will issue an appropriate order and judgment.


___s/ Mary L. Cooper_____
**MARY L. COOPER**
United States District Judge

27