# EXHIBIT C

FILED by _____ D.C.
ELECTRONIC

**Jun 2 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case #06-80391-CIV-RYSKAMP\VITUNAC

Shawn Brown, et al.

        Plaintiffs

vs.

General Nutrition Companies, Inc.

        Defendant.            /

## MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

      General Nutrition Companies, Inc. ("GNC"), by and through undersigned counsel and pursuant to Rule 7.1.C, Southern District of Florida Local Rules, hereby files this memorandum in opposition to Plaintiffs' motion to remand this proceeding to the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "State Court")[1], and states:

### PRELIMINARY STATEMENT

      1.    This lawsuit is undeniably related to MuscleTech's pending bankruptcy case. GNC has a claim against MuscleTech for contractual indemnification of damages incurred in connection with the lawsuit, including legal fees already incurred over the past four years. The courts presiding over MuscleTech's bankruptcy case (both in Canada and the United States) have entered orders expressly recognizing the relationship of Plaintiffs' claims to MuscleTech's reorganization — and indeed staying prosecution of Plaintiff's claims absent further order from those Courts.

---

[1] Plaintiffs' motion to remand was filed in this Court on May 23, 2006. 28 U.S.C. §1447(c) requires any motion to remand to have been filed no more than thirty days after the removal of the proceeding. Based on the April 18, 2006 removal of this lawsuit, GNC believes that Plaintiffs' motion to remand was due no later than May 22, 2006 and is, therefore, untimely.

DALLAS 1662244v1

2.      Further, interests of comity, judicial economy, and the consistency that results when a single court decides common issues of fact and law strongly weigh against any suggestion that this Court should abstain from considering the removal and transfer of this proceeding to the Southern District of New York. Together with the removal of this proceeding, GNC is seeking to remove and transfer five other similar class action lawsuits to New York where they can be consistently and efficiently resolved by the same Court presiding over MuscleTech's bankruptcy case. For all these reasons, this Court should deny remand and take such other and further steps as are necessary to facilitate the transfer of this proceeding to the Southern District of New York.

## BACKGROUND

3.      This lawsuit is one of six nearly identical class action lawsuits (collectively, the "Andro Actions") commenced by plaintiffs in different states against GNC for selling products manufactured by, among others, MuscleTech Research and Development, Inc. and its affiliates ("MuscleTech"). Each lawsuit alleges the same basic facts and presents the same basic legal issues, and each putative (although not yet certified) class is represented by the same law firms representing Plaintiffs in this proceeding. This particular proceeding commenced in November 2002. Since that time, Plaintiffs have yet to successfully certify a class of plaintiffs in this case and, indeed, in almost four years of litigation, no plaintiff in any of the six Andro Actions has successfully certified a class.

4.      The consolidated insolvency proceedings of MuscleTech and the related global mediation process offer the prospect of a global resolution of this and dozens of other product liability lawsuits around the country based on the sale and distribution of MuscleTech products. On January 18, 2006, MuscleTech Research and Development, Inc. and certain affiliated entities commenced a proceeding (the "CCAA Proceeding") under Canada's Companies' Creditors

2

Arrangement Act (the "CCAA") before the Superior Court of Justice (Commercial List) (the "Canadian Court"). Simultaneously, MuscleTech filed a case under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "New York Court"). That case was subsequently removed to the United States District Court for the Southern District of New York (the "New York Court"), Case No. 06-Civ-538 (JSR) and is also pending before District Judge Jed S. Rakoff (the "Chapter 15 Case").

## ARGUMENT

A.    **This lawsuit is "related to" the Chapter 15 Case ancillary to the CCAA Proceeding.**

5.    As a preliminary matter, GNC disputes Plaintiffs' characterization of the proper "standard of review" to be employed by the Court in determining whether to retain jurisdiction. This lawsuit was removed to federal court, not based on any federal question or diversity of parties, but based upon the recent filing of MuscleTech's Chapter 15 Case. Based on that filing, GNC properly removed this lawsuit pursuant to 28 U.S.C. § 1452(a) — not 28 U.S.C. § 1441, which is inapplicable to the matters currently before the Court. The proper issue before the Court is whether removal is appropriate pursuant to 28 U.S.C. § 1452(a). In these circumstances, therefore, the threshold question is whether this proceeding is "related to" the Chapter 15 Case. Plaintiffs' arguments concerning § 1441 do not apply to the removal of a case under § 1452.

6.    Under any analysis, the existence of GNC's contractual right of indemnification against MuscleTech gives rise to sufficient impact on the Chapter 15 Case (and the CCAA Proceeding) to deem this proceeding related to the Chapter 15 Case for purposes of 28 U.S.C. §§ 1334(b) and 1452 (a). Most circuit courts, including the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh, have adopted the Third Circuit's enunciation of the scope of "related to" jurisdiction, which states that "the test for determining whether a civil proceeding is related

DALLAS 1662244v1

3

to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"[2]  The Seventh Circuit, articulating an admittedly-narrower (though still broad) standard, has stated that a proceeding can only be related to a bankruptcy case if its resolution "affects the amount of property available for distribution or *the allocation of property among the creditors.*"[3]

7.    Under either test, this proceeding (not to mention the five other Andro Actions) is related to the Chapter 15 Case.  Not only does GNC's contractual right of indemnification against MuscleTech give rise to sufficient impact on the estate to relate this proceeding to the Chapter 15 Case, but several orders entered in the CCAA Proceeding and the Chapter 15 Case affirm the relationship between this proceeding and MuscleTech's insolvency proceedings.

*GNC's Contractual Indemnity*

8.    As noted in GNC's notice of removal, MuscleTech is contractually obligated to indemnify GNC for certain liabilities arising from the standard product indemnity stated in the terms and conditions of GNC's standard purchase order.  In relevant part, the purchase order states as follows:

> 12. INDEMNITY. [MuscleTech] agrees to indemnify [GNC] from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon, and such indemnity shall survive acceptance of the goods and payment therefore by [GNC].[4]

9.    Already GNC has a claim against MuscleTech for indemnification of its legal fees and expenses incurred in defending against four years of protracted litigation with Plaintiffs in

---

[2] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (reversed on other grounds) (emphasis in original); *see also In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1180 (3d Cir. 1996).
[3] *See, e.g., The Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (emphasis added) (citing *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)).
[4] A true and correct copy of the form Purchase Order used by GNC in connection with the purchase of prohormone-containing products from MuscleTech is attached as Exhibit "A" hereto.

this and the other Andro Actions. As of May 31, 2006, GNC has already incurred fees and expenses in connection with this lawsuit exceeding $200,000, and over $1,300,000 in connection with defending all six Andro Actions. This is not merely a conflict between potential creditors. GNC has an actual, noncontingent claim against MuscleTech that grows with each passing day that litigation continues; indeed, Plaintiffs concede the fact that GNC must "file its unliquidated claim in the Canadian bankruptcy case."[5] Accordingly, this proceeding is related to the Chapter 15 Case by virtue of GNC's contractual right to indemnification from MuscleTech.

10.    This analysis is affirmed by none other than the seminal opinion on the scope of "related to" jurisdiction, *Pacor, Inc. v. Higgins*.[6] In that case, the Third Circuit held that a product liability lawsuit maintained against an asbestos supplier was *not* related to the then-pending *Johns-Manville* bankruptcy case because the outcome of the pending lawsuit (by itself) could have no conceivable impact on the *Johns-Manville* case. Notwithstanding the asbestos supplier's assertion that its planned to seek indemnification against Johns-Manville, the Third Circuit stated that such a claim would require the supplier to bring an entirely separate proceeding against Johns-Manville to assert its common law claim of indemnification.[7]

11.    Far different, however, according to the Third Circuit, were those cases in which a *contractual* right of indemnification existed against the debtor such that a judgment in favor of the plaintiff in the pending litigation would "automatically result in indemnification liability against [the debtor]."[8] In those cases, the Third Circuit indicated that the rendering of a

---

[5] Motion to Remand, at 4.
[6] *Pacor,* 743 F.2d at 995.
[7] *Pacor,* 743 F.2d at 995.
[8] *Pacor,* 743 F.2d at 995 (citing *In re Brentano's*, 27 B.R. 90 (Bankr. S.D. N.Y. 1983)). The *Pacor* court specifically noted that it was clear in the *Brentano's* case that, in light of the existence of the debtor's contractual obligation to indemnify the defendant, "the action ... could and would affect the estate in bankruptcy." *Pacor,* 743 F.2d at 995.

judgment *would* impact the relative priorities of and distributions to creditors in the debtor-indemnitor's bankruptcy case.[9]

12.    Even under the somewhat narrower Seventh Circuit test, the existence of GNC's contractual right of indemnity guarantees that this litigation will affect "the allocation of property among the creditors" of MuscleTech no matter its outcome. As noted above, GNC already holds a claim against MuscleTech in an amount exceeding $1,300,000 just for defense costs, the satisfaction of which will necessarily dilute the overall distribution to unsecured creditors compared to the distribution that would be paid were the claims pool reduced by the amount of GNC's claim. Of course, in the unlikely event Plaintiffs prevail on the merits and obtain a judgment against GNC, GNC's *pro rata* share of MuscleTech's available assets for distribution will only increase. Under either scenario, therefore, this proceeding — and the five other Andro Actions — affects the allocation of property among MuscleTech's creditors and is therefore related to the Chapter 15 Case.

**Prior Orders entered in the CCAA Proceeding and the Chapter 15 Case**

13.    The claims asserted by Plaintiffs in the Andro Actions have been recognized by both the New York and Canadian Courts as having a direct relationship to MuscleTech. In its *Order re: Call for (i) Claims Against the Applicants and (ii) Product Liability Claims Against the Subject Parties*, dated March 3, 2006 (the "Call to Claims Order"), which was entered in the CCAA Proceeding and noted on the docket in the Chapter 15 Case, the Canadian Court directed persons holding "Product Liability Claims" to complete and file proofs of claim with the Monitor

---

[9] *Pacor*, 743 F.2d at 995; *see also Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997) (noting that *Pacor* specifically acknowledges that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of "related to" jurisdiction).

appointed in the CCAA Proceeding.[10]  Product Liability Claims are defined in relevant part as follows—

> *any right or claim* ... which alleges, arises out of or is in any way related to wrongful death or personal injury (whether physical, economic, emotional or otherwise), ... *against any of the Subject Parties arising from, based on or in connection with the development, advertising and marketing, and sale of health supplements, weight-loss and sports nutrition or other products by the Applicants...*[11]

14.    For purposes of the Call to Claims Order, GNC is included among the parties identified as "Subject Parties" and MuscleTech is an "Applicant."  GNC's own indemnity claim against MuscleTech is also defined in the Call to Claims Order, although GNC's claim is defined as a "Related Claim," and holders of Related Claims were specifically directed not to file proofs of claim at this time.[12]

15.    The point of all this is that *not only GNC's claim but also Plaintiffs' claim is related to MuscleTech's pending Chapter 15 Case*.  In fact, assuming Plaintiffs filed a proof of claim in the CCAA Proceeding as directed in the Call to Claims Order, the filing of that claim raises this proceeding from a noncore "related to" proceeding to a core proceeding for purposes of 28 U.S.C. §§ 157(b) and 1334(b).[13]

16.    As further evidence of the "relatedness" of this lawsuit (and indeed, all of the Andro Actions) to the Chapter 15 Case, the New York Court has signed a series of orders staying various product liability litigation, including the Andro Actions.  The first such "stay order,"

---

[10] A true and correct copy of the Call to Claims Order is attached as Exhibit "B" hereto.
[11] Call to Claims Order, at 5-6.
[12] *See* Call to Claims Order, at 6, 14.
[13] Among other things, the filing of a proof of claim in the CCAA Proceeding or Chapter 15 Case would trump any argument in favor of mandatory abstention, which applies only to noncore proceedings. Ordinarily, when a proof of claim is filed, the underlying litigation is transformed into a core proceeding. *See In re Argus Group 1700, Inc.*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) (adopting the rationale that the filing of a proof of claim in a bankruptcy proceeding transforms a prepetition state law claim which was filed in state court before the bankruptcy filing into a core proceeding), *aff'd*, 206 B.R. 757 (E.D. Pa. 1997).

7

entered by the originally-presiding bankruptcy court on January 18, 2006 (the "January 18 Order"), stayed all litigation against various defendants, including GNC, "based on the research, marketing, manufacture, sale and distribution primarily of products containing ephedra or prohormones (collectively, the "Product Liability Actions")."[14]    The Andro Actions are undeniably "Product Liability Actions" stayed by the New York Court, and the January 18 Order included a specific finding that—

> unless a temporary restraining order is issued, it appears to the Court that there is a material risk that one or more parties in interest will continue the prosecution of a Product Liability Action (including scheduled discovery) or commence similar product liability litigation based on products sold by [MuscleTech], involving one or more of the Foreign Applicants or the Non-Applicant Defendants [(e.g., GNC)], thereby potentially interfering with or causing harm to, the Monitor's efforts to administer the Foreign Applicants' [(i.e., MuscleTech's)] estates pursuant to the Canadian Proceedings ... and as a result, the Foreign Applicants may suffer immediate and irreparable injury.[15]

17.    A series of further orders has extended that stay through, at present, June 9, 2006.[16]    The second such extension, signed by Judge Rakoff on March 2, 2006, directed MuscleTech's counsel to file a copy of the March 2 order in each "Product Liability Action" to put parties on notice of the relationship of these lawsuits to the Chapter 15 Case and the pending stay of all such litigation.    Presently, a copy of the stay orders is being filed in each Andro Action.

---

[14] Order to Show Cause with Temporary Restraining Order and, After Notice and a Hearing, Preliminary Injunction, Enjoining the Commencement or Continuation of Product Liability Actions Against Foreign Applicants and Others, *In re MuscleTech Research and Development, Inc.*, Case No. 06-10092 (JMP) (Bankr. S.D. N.Y. January 18, 2006).
[15] January 18 Order, at 3.
[16] GNC is informed that MuscleTech will request a further extension of the stay at a regularly-scheduled hearing before Judge Rakoff on May 31, 2006. True and correct copies of the existing "stay orders" are attached as Exhibit "C" hereto.

DALLAS 1662244v1

8

18.    This lawsuit, like all of the Andro Actions — and, indeed, the many other lawsuits filed across the country — is related to MuscleTech's CCAA Proceeding and Chapter 15 Case. The losses already incurred by GNC as a result of this litigation give rise to a claim against MuscleTech's estate that is entitled to a *pro rata* distribution with other creditors in MuscleTech's ultimate plan of arrangement that will only continue to grow as this litigation wears on.

**B.    This Court should neither abstain from hearing this matter nor remand it to the State Court.**

19.    As the United States Supreme Court has stated, "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."[17] In exercising the discretion to remand a properly-removed proceeding, courts are "guided by what will best assure an economical and expeditious administration of the debtor's estate."[18] By seeking removal and transfer of this (and the other five Andro Actions) to the New York Court, GNC offers the promise of consistent and efficient resolution to the litigation in connection with the global mediation process already pending there. In contrast, the Plaintiffs ask this Court to remand this (and the other five Andro Actions) so that they may continue to be litigated in piecemeal fashion for years to come. Under these circumstances, neither abstention nor remand is appropriate.

---

[17] *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813 (1976) (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959); *see also United Security & Comms, Inc. v. Rite Aid Corp. (In re United Security & Communications, Inc.)*, 93 B.R. 945, 961 (Bankr. S.D. Ohio 1988); *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re The Charter Co.)*, 82 B.R. 602, 603 (Bankr. M.D. Fla. 1988).

[18] *Harley Hotels, Inc. v. Rain's Int'l, Ltd.*, 57 B.R. 773, 782 (Bankr. M.D. Pa. 1985) (citing *In re Franklin Press, Inc.*, 43 B.R. 522, 523 (Bankr. S.D. Fla. 1985)); *In re The Charter Co.*, 82 B.R. at 603.

DALLAS 1662244v1

20.    As stated by the Plaintiffs, a court may exercise permissible abstention "in the interests of justice, or in the interest of comity with state courts or respect for state law"[19] or elect to remand a proceeding "on any equitable ground."[20]  As Plaintiffs further note, courts consider many factors in reaching such a conclusion, including (i) the effect on the efficient administration of the bankruptcy estate; (ii) the extent to which issues of state law predominate; (iii) the difficulty or unsettled nature of the applicable state law; (iv) comity with state courts; (v) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (vi) the existence of a right to trial by jury; (vii) prejudice to the involuntarily removed parties; and (viii) the potential for duplicative and uneconomical use of judicial resources and the lessened possibility of inconsistent results.[21]  However, *contrary* to Plaintiffs' conclusory assertions, no basis exists — whether equitable or otherwise — to justify remand of this properly-removed lawsuit.  GNC illustrates the point by reference to various statements made by Plaintiffs in their motion to remand.[22]

21.    *"First, as discussed above, this litigation has no effect on the Canadian bankruptcy estate, because Muscletech is not a party."*

> This statement is simply wrong.  GNC has a direct claim against MuscleTech for indemnification of damages incurred in defending against this and the other Andro Actions.  In fact, remand of this lawsuit only serves to *increase* that claim in the Canadian bankruptcy estate by forcing GNC to incur — and MuscleTech to indemnify — the continued expense of defending six lawsuits in six venues.  Moreover, if Plaintiffs filed proofs of claim in the CCAA Proceeding as directed

---

[19] 28 U.S.C. 1334(c)(1).

[20] 28 U.S.C. § 1452(b).

[21] *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987); *see also Kerusa Co. v. 210Z/515 Real Estate Ltd.*, No. 04-708, 2004 U.S. Dist. LEXIS 8168, *10 (S.D.N.Y. May 6, 2004); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

[22] The following eight italicized quotes are taken verbatim from *Plaintiffs' Memorandum in Support of Motion to Remand*, at 4-5.

DALLAS 1662244v1

10

in the Call to Claims Order, the resolution of Plaintiffs' claims in the lawsuit is a "core proceeding" over which district courts have original jurisdiction.[23]

22.     *"Second, state law issues clearly predominate because Plaintiffs' only claims arise under Florida statutes, and GNC has raised no federal law issues."*

Again, while this may be true, it is irrelevant in light of the relationship of this proceeding to MuscleTech's pending bankruptcy cases.[24] The New York Court, on the other hand, can resolve the state law claims in the Andro Actions just as ably as it is already resolving those set forth in the many other similar lawsuits against MuscleTech already pending before it.

23.     *"Third, the difficulty or unsettled nature of state law in this case is not a factor in this analysis."*

The Plaintiffs' bare conclusory assertion on this point is insufficient, and apparently misses the point of this factor. The Plaintiffs' complaint alleges claims for consumer fraud and unfair trade practices — areas of law that are well-settled and as easily determined by any federal district court as by the State Court. For the existence of state law to justify remand, (i) the issues must involve matters of substantial public importance and (ii) the existing state court precedent must be such that a federal court could not predict the probable conclusion of the state court on the issue.[25] Neither factor is present here.

24.     *"Fourth, as in any case involving alleged jurisdiction by removal, particularly where only state law claims are alleged, comity concerns point toward remand."*

Plaintiffs' argument suggests that the Court evaluate this proceeding in a vacuum. Notwithstanding the allegation of state law claims, countless other lawsuits across the country alleging similar (if not identical) claims based on similar (if not identical) facts are being consolidated and resolved in a single forum. In light of the global resolution of these claims being administered in the New York Court and the pendency of insolvency proceedings in *two* countries to which the instant lawsuit is related, comity points to the New York Court for an efficient, economical and consistent resolution of this and the other Andro Actions.[26]

---

[23] *See Argus Group*, 206 B.R. at 747-48.

[24] *See, e.g., T.A. Title Ins. Co. v. Lampl, Sable & Makaroff (In re Marcus Hook Development Park, Inc.)*, 153 B.R. 693, 702 (Bankr. W.D. Pa. 1993) ("The fact that the complaint raises issues of state law is not dispositive").

[25] *In re The Charter Co.*, 82 B.R. at 604 (citing *Harley Hotels*, 57 B.R. at 781).

[26] *See, e.g., Harley Hotels, Inc.*, 57 B.R. at 783 ("We conclude that the mere fact that proceedings are pending in several state courts poses a substantial problem in terms of efficiency"); *see also United*

11

25.    *"Fifth, as previously noted, any relationship between this proceeding and the Canadian bankruptcy case is extremely speculative and highly attenuated."*

The relationship of this proceeding to the CCAA Proceeding and the Chapter 15 Case is clearly defined not only by GNC's indemnity claims but also by two separate, substantive orders declaring this proceeding of relevance to the CCAA Proceeding.

26.    *"Sixth, Plaintiffs have demanded the right to trial by jury."*

This issue points to the fact that parties enjoy a very limited right to trial by jury in bankruptcy courts. Given the fact that the Chapter 15 Case is pending before an Article III United States District Judge, however, removal (or transfer) of this proceeding should not affect Plaintiffs' right, if any, to a trial by jury.

27.    *"Seventh, Plaintiffs would be severely prejudiced by the removal and transfer of this action, which would result in its consolidation somehow with the Canadian bankruptcy proceeding and effectively terminate the litigation."*

If by "terminate" Plaintiffs mean "resolve," then Plaintiffs are correct. After four years of stagnant litigation, including four years of failed attempts by Plaintiffs to certify a class, the removal, transfer and consolidation of this proceeding in the New York Court would very likely result in its resolution, completion and "termination."

28.    *"Finally, given the fact that this case has been proceeding for nearly four years before the state court, it is simply uneconomical for a federal court to assert jurisdiction at this late date."*

Plaintiffs miss the point. GNC has requested transfer of this proceeding to the New York Court, which is already presiding over various MuscleTech product liability actions. Compared to the piecemeal litigation of this and the other five Andro Actions by the very same law firms in six states, the removal and consolidation of this proceeding with those already being resolved in New York would be substantially more likely to provide a more economical, efficient means of adjudication — both for the parties and the judicial system.[27] Given the age of

_____

*Security*, 93 B.R. at 961 ("Further, the fact that this proceeding is noncore and presents predominantly issues of state law does not compel abstention").

[27] *Harley Hotels, Inc.*, 57 B.R. at 783 ("Since there is no constitutional barrier to the bankruptcy court's adjudication of this case, and since the concerns of comity are insufficient to warrant abstention, we see

12

this proceeding and the lack of forward progress toward adjudication (including certification of a class), Plaintiffs' suggestion that it would be difficult for this Court or the New York Court to "climb the learning curve" is disingenuous. The New York Court should have no problem adding this proceeding to the other MuscleTech product liability actions with which it is already familiar.

29.    Neither is abstention mandated under 28 U.S.C. § 1334(c)(2) when, as here, no indication exists that the proceeding can be adjudicated timely in the state forum. As the party moving for remand, Plaintiffs bear the burden to show that this action can be timely adjudicated in the State Court, yet Plaintiffs provide no argument, present no evidence, and cite no authority to support such a finding.[28]

30.    Through no fault of the State Court, this case (like the five other Andro Actions) has languished in the State Court for years. Even after four years of litigation, no class has been certified, discovery is not complete, and Plaintiffs give no indication that any of these matters will be resolved any time soon.

31.    On very similar facts, at least one court has held that the "timely adjudication" prong of the mandatory abstention test was not met — and thus abstention was not mandated — when a class certification hearing had not occurred, discovery was not complete, and the plaintiff had failed to produce evidence that the matter could be more timely adjudicated in state court.[29]

32.    As Plaintiffs correctly note in their motion, "[a]fter nearly four years of litigation in state court, GNC has filed a notice of removal because one of the non-party manufacturers — MuscleTech — has declared bankruptcy." Particularly when balanced against the considerations

---

no reason why this case should not be resolved in one forum, rather than forcing the debtor to defend several state court actions simultaneously").

[28] *In re Asousa P'ship*, 264 B.R. 376, 389 (Bankr. E.D. Pa. 2001) (stating that the party moving for abstention bears the burden of showing that the action can be timely adjudicated); *see also In re Marcus Hook Development Park, Inc.*, 153 B.R. at 702 (finding it "highly unlikely" that the state court proceeding could be adjudicated in a timely manner for purposes of determining mandatory abstention where the cause of action was already two years old, was still only in the preliminary stages, and would likely require several more years to adjudicate).

[29] *Allen v. J.K. Harris & Co., LLC*, 331 B.R. 634, 644 (Bankr. E.D. Pa. 2005).

13

of comity and judicial economy promoted by consolidation of the Andro Actions with the already-pending global mediation already pending in the New York Court, mandatory abstention is not called for here. This Court should deny Plaintiffs' motion to remand.

## CONCLUSION

33.    Removal of this proceeding is just and proper in light of the many connections between this proceeding and the various MuscleTech proceedings and will promote the efficient, economic use of judicial resources and provide for a swift resolution of this proceeding.

ACCORDINGLY, for the foregoing reasons, GNC requests that the Court deny Plaintiffs' motion to remand this action to the State Court and grant such other and further relief as the Court may deem just and proper.

Dated: June 2nd, 2006

Respectfully submitted,

By: _____

Elizabeth L. Bevington
Fla. Bar No. 503339
Email: elizabeth.bevington@hklaw.com
Jason D. Lazarus
Fla. Bar No. 0139040
E-mail: jason.lazarus@hklaw.com
HOLLAND & KNIGHT LLP
222 Lakeview Avenue, Suite 1000
West Palm Beach, FL  33401
Telephone:  (561) 833-2000
Facsimile:  (561) 650-8399

James G. Munisteri
jmunisteri@gardere.com
Michael P. Cooley
mcooley@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201
Telephone:  (214) 999-4824
Facsimile:  (214) 999-3824

Attorneys for Defendant
GENERAL NUTRITION COMPANIES, INC.

14

## CERTIFICATE OF SERVICE

I hereby certify that, on June 2nd 2006, a true and correct copy of the above and foregoing document was mailed, postage prepaid, to the following counsel of record:

John Goldsmith
Trenam, Kernker, Scharf, Barkin, Frye,
O'Neill & Mullis, P.A.
2700 Bank of America Plaza
101 East Kennedy Boulevard
P.O. Box 1102
Tampa, Florida 33602
E-mail: jdgoldsmith@trenam.com

Paul B. Thanasides
Seth Zalkin
Thanasides, Zalkin & Acero
303 Park Avenue South, Suite 1104
New York, New York 10010
E-mail: thanasides@tzalaw.com
E-mail: zalkin@tzalaw.com


Jason D. Lazarus
Counsel to General Nutrition Companies, Inc.

# 3821046_v2

15

DALLAS 1662244v1

# GENERAL NUTRITION DISTRIBUTION CENTER

BUNCHER INDUSTRIAL PARK - LEETSDALE, PA 15056
(Phone) 412/288-4600        (FAX) 412/288-4743

# PURCHASE ORDER

Purchase Order No. _____

Purchase Data _____

Contract NBR _____

Payment Terms _____

Freight Terms _____

Available to Ship _____

SHIP TO

P.O. No. must show on all packages, shipping notices, invoices, and correspondence. Address to:
**GENERAL NUTRITION DISTRIBUTION CO.**
**c/o GENERAL NUTRITION CORPORATION**
**921 PENN AVE., PITTSBURGH, PA 15222**
A copy of this document must accompany all shipments.

This Purchase Order constitutes an offer to purchase the Goods described below and is not an acceptance of any offer to sell Goods. This offer expressly limits Seller's acceptance of the offer to the Terms and Conditions stated herein, without modification, addition, deletion or alteration, except as agreed by the parties in writing. No additional or different terms, whether stated orally or in writing, in Seller's proposal, quotation, acknowledgement, confirmation, invoice or other form or writing shall be deemed a part of any agreement between Buyer or Seller, unless Buyer expressly consents in writing to such additional or different terms. This Purchase Order constitutes notice of objection to any such additional and/or different term. Any reference to Seller's documents is only for the purpose of describing the product and its specifications, and is not an incorporation of any provisions contained therein.

In the absence of written acceptance by Seller, the commencement of any work by the Seller pursuant to this Purchase Order or the delivery of any Goods by Seller shall be deemed an acceptance hereof only on the Terms and Conditions set forth herein. Notwithstanding the foregoing, Buyer shall have the right to cancel this Purchase Order as to all or any of the Goods upon reasonable notice to Seller. Cancellation shall be effective on the date Seller receives Notice of Cancellation.

It is understood that the extended and Total Price (but not the Unit Price) shall be adjusted in the event of any discrepancy between the quantity ordered and the quantity received.

THE TERMS AND CONDITIONS APPEARING ON THE REVERSE SIDE HEREOF ARE AN INTEGRAL PART OF THIS PURCHASE ORDER.

| Quantity | UM | Code No. | Description | Size | Case Pack | |
|----------|----|----------|-------------|------|-----------|---|
| | | | | | | |

SPECIAL INSTRUCTIONS:

**EXHIBIT**
**A**

GENERAL NUTRITION DISTRIBUTION COMPANY

1. DEFINITIONS. The term "Purchase Order" shall mean the two-sided order form and any specifications, drawings, samples or other documents attached to or part of any such order. The terms "Purchase Order," "Seller" and "Buyer" refer to the parties designated as such on the face of this Purchase Order, and their duly authorized representatives. "Terms" shall mean the terms as listed. Terms and Conditions shall mean the Terms and Conditions stated on Page 1 of this Purchase Order, any Term or Condition contained in any specification, drawing, or other documentation expressly made a part of this Purchase Order.

2. PURCHASE ORDER AS THE ONLY AUTHORIZATION TO DELIVER GOODS. [text largely illegible]

3. DELIVERY AND ACCEPTANCE OF GOODS. [text largely illegible]

4. NONCONFORMING GOODS. Buyer may reject or return acceptance of Goods or any portion thereof which, without limitation, are (i) not timely delivered, (ii) do not conform to Buyer's quality control standards, (iii) defective, (iv) otherwise not in conformity with quantities or descriptions referred to on this Purchase Order or made a part thereof, [text illegible]

5. INSPECTION. In addition to the inspection rights [text largely illegible]

6. THE PRICE. [text largely illegible]

7. FREIGHT AND INSURANCE. Unless otherwise indicated, all shipments are to be [text illegible]

10. PATENTS. Seller agrees to defend, indemnify and save Buyer harmless from and against [text illegible]

11. WARRANTIES. In addition to any warranties described on Page 1 of this Purchase Order or otherwise, Seller expressly represents and warrants as follows:
(A) The Seller warrants that the Goods covered by this Purchase Order are of good merchantable quality and fit and safe for consumer use.
(B) The Seller warrants that the Goods covered by this Purchase Order have been manufactured, packaged, stored and shipped in accordance with the applicable standards of Good Manufacturing Practices promulgated under the Food, Drug and Cosmetic Act and all Federal, State and Local laws, rules and regulations.
(C) The Seller warrants that all goods covered by this Purchase Order conform [text illegible]

12. INDEMNITY. The Seller agrees to indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon, and such indemnity shall survive acceptance of the goods and payment therefore by the Buyer.

13. CUSTOMER RETURNS. Seller understands that Buyer offers its customers an unconditional money-back guarantee for the Goods. Seller agrees to participate in such customer satisfaction and further agrees to pay or credit to Buyer the price to Buyer's customer [text illegible]

14. ASSIGNMENT/DELEGATION. It is understood that the Buyer is relying on the special skills and abilities of the Seller to provide the Goods in accordance with this Purchase Order. To satisfy its purpose, the Seller agrees not to assign any right nor delegate any duty under this Purchase Order without first obtaining the prior written consent of the Buyer. No right or interest in this contract shall be assigned by Seller without the prior written consent of the Buyer and no delegation of any obligation owed or of the performance of any obligation by Seller shall be made without the prior written consent of the Buyer. Any attempted assignment or delegation shall be wholly void and totally ineffective for all purposes unless made in accordance with this Section.

15. [text largely illegible]

16. DISTRIBUTION. The parties agree that Buyer may distribute and sell the Goods through its existing national and international distribution network.

17. REMEDIES. In addition to other remedies provided in this Purchase Order [text illegible]

18. HAZARDOUS MATERIALS. If any article being purchased is considered to be a hazardous material under Federal, State, or Local Laws or Regulations, a Material Safety Data Sheet (MSDS) must be submitted with each shipment of the article.

19. SPECIAL DAMAGES. By accepting this Purchase Order, the Seller understands that Buyer [text illegible]



Court File No. 06-CL-6241

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

THE HONOURABLE          )          FRIDAY, THE 3rd DAY
                        )
MR. JUSTICE FARLEY      )          OF MARCH, 2006

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF MUSCLETECH RESEARCH AND DEVELOPMENT INC.
AND THOSE ENTITIES LISTED ON SCHEDULE "A" HERETO

**ORDER RE: CALL FOR (I) CLAIMS AGAINST THE APPLICANTS AND
(II) PRODUCT LIABILITY CLAIMS AGAINST THE SUBJECT PARTIES**

THIS MOTION made by MuscleTech Research and Development Inc. and those entities listed on Schedule "A" hereto (collectively, the "Applicants") for an Order substantially in the form attached at Tab 1 of the Motion Record herein was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING the Notice of Motion, the Affidavit of Barry Kadoch sworn February 21, 2006 and the exhibits thereto (the "Affidavit"), and the Fourth Report of RSM Richter Inc. (the "Monitor") dated February 28, 2006, all filed, and on hearing submissions of respective counsel for the Applicants, the Monitor, the Iovate Companies (as defined below), Zurich Insurance Company, the Ad Hoc Committee of MuscleTech Tort Claimants (the "Ad Hoc Committee") and such other counsel, if any, as were present and wished to make submissions.



- 2 -

## SERVICE

1.    **THIS COURT ORDERS** that the time for service and filing of the Notice of Motion and Motion Record herein be and it is hereby abridged so that the motion may be heard today and that further service on any interested party is hereby dispensed with.

## MONITOR'S ROLE

2.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA and under the Initial Order, is hereby directed and empowered to take such other actions and fulfill such other roles as are contemplated by this Order.

## CALL FOR CLAIMS

3.    **THIS COURT ORDERS** that, for the purposes of this Order, the following terms shall have the following meanings ascribed thereto:

(a)    "**Affiliates**" means all Persons that, directly or indirectly, control or are controlled by any one or more of the Applicants, or that are affiliated, associated or related with any one or more of the Applicants for the purpose of the *Business Corporations Act*, R.S.O. 1990, c.B.16, as amended to the date of this Order, including, without limitation, the Iovate Companies;

(b)    "**Applicants' Directors**" means all individuals who were, on or at any time before the Filing Date, directors or officers of any one or more of the Applicants;

(c)    "**Business Day**" means a day, other than a Saturday or Sunday, on which banks are generally open for business in Toronto, Ontario;

(d)    "**CCAA**" means the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended to the date of this Order;

(e)    "**Claim**" means any right or claim, other than a Product Liability Claim, Related Claim or an Excluded Claim, of any Person whatsoever, whether or not asserted and however acquired, against any of the Applicants and/or the Applicants'

- 3 -

Directors in connection with any indebtedness, liability or obligation of any kind of any of the Applicants and/or the Applicants' Directors, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, and whether by guarantee, surety, subrogation, cross-claim, counterclaim, set off or otherwise, and whether or not such right is executory in nature, including the right of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation is based in whole or in part on facts existing or discoverable prior to the Filing Date or that would have been claims provable in bankruptcy under the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c.B-3, had the affected Applicant and/or the Applicant Director become bankrupt on the Filing Date, including, for greater certainty, any interest, fees, penalties, costs and expenses accrued, incurred or otherwise arising in connection with any such claim;

(f) "**Claims Bar Date**" means 5:00 p.m. (Eastern Standard Time) on the forty-fifth (45th) day (or the next Business Day if that day is not a Business Day) after the date on which the U.S. District Court (or the U.S. Bankruptcy Court, if applicable) enters its supplemental order in support of this Order;

(g) "**Court**" means the Ontario Superior Court of Justice (Commercial List);

(h) "**Creditor**" means any Person having a Claim or a Product Liability Claim;

(i) "**Directors**" means all individuals who were, on or at any time before the Filing Date, directors or officers of any one or more of the Affiliates or the Third Parties;

(j) "**Excluded Claim**" means: (a) any claim that falls within Section 18.3(2) of the CCAA; and (b) claims secured by the Charges (as defined in the Initial Order) or any similar charge provided for in the Initial Order;

(k) "**Filing Date**" means January 18, 2006;

- 4 -

(l)     **"Initial Order"** means the Initial Order of this Court dated January 18, 2006 in the within proceedings, as same may be amended from time to time;

(m)     **"Instruction Letter"** means the instruction letter to Creditors, in substantially the form attached hereto as Schedule "D", regarding completion by Creditors of the Proof of Claim (and the applicable Schedules thereto);

(n)     **"Iovate Companies"** means those entities listed on Schedule "B" hereto;

(o)     **"Known Creditor"** means:

    (i)     any Person that the books and records of any of the Applicants disclose held a Claim as of the Filing Date, where monies in respect of such Claim remain unpaid in full or in part as of the date hereof;

    (ii)     any Person who has commenced a legal proceeding in respect of a Claim or given any of the Applicants written notice of an intention to commence a legal proceeding in respect of a Claim; provided that where a solicitor or attorney of record has been listed in connection with any such proceeding, the "Known Creditor" for purposes of any notice required herein or to be given hereunder shall be, in addition to that Person, their solicitor or attorney of record;

    (iii)     any other Person who any of the Applicants know (that is, have actual and not constructive knowledge) to hold a Claim as of the Filing Date and for whom the Applicant has a mailing address or other suitable contact information;

    (iv)     any Person that the books and records of any of the Subject Parties disclose held a Product Liability Claim as of the Filing Date, where monies in respect of such Product Liability Claim remain unpaid in full or in part as of the date hereof;

- 5 -

(v)    any Person who has commenced a legal proceeding in respect of a Product Liability Claim or given any of the Subject Parties written notice of an intention to commence a legal proceeding in respect of a Product Liability Claim; provided that where a solicitor or attorney of record has been listed in connection with any such proceeding, the "Known Creditor" for purposes of any notice required herein or to be given hereunder shall be, in addition to that Person, their solicitor or attorney of record; and

(vi)    any other Person who any of the Subject Parties know (that is, have actual and not constructive knowledge) to hold a Product Liability Claim as of the Filing Date and for whom the Subject Party has a mailing address or other suitable contact information;

(p)    "**Notice to Creditors**" means the notice to Creditors for publication in substantially the form attached hereto as Schedule "E";

(q)    "**Other Insolvency Proceedings**" means any plenary or ancillary receivership, reorganization, restructuring, debtor/creditor, bankruptcy or other insolvency proceedings authorized by this Court or permitted by law in any jurisdiction in Canada or the United States affecting the Subject Parties, or any of them;

(r)    "**Person**" means any individual, partnership, limited partnership, joint venture, trust, corporation, unincorporated organization, government, agency, regulatory body or instrumentality thereof, legal personal representative or litigation guardian, or any other judicial entity howsoever designated or constituted;

(s)    "**Plan**" means a Plan of Compromise or Arrangement filed by the Applicants, or any of them, in the within proceedings;

(t)    "**Product Liability Claim**" means any right or claim, including any action, proceeding or class action in respect of any such right or claim, other than a Claim or an Excluded Claim, of any Person which alleges, arises out of or is in any way related to wrongful death or personal injury (whether physical, economic, emotional or otherwise), whether or not asserted and however acquired, against

- 6 -

any of the Subject Parties arising from, based on or in connection with the development, advertising and marketing, and sale of health supplements, weight-loss and sports nutrition or other products by the Applicants or any of them, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, present, future, known or unknown, including the right of any Person to advance a claim for contribution or indemnity or otherwise as against the Applicants or any of them with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, where such liability is based in whole or in part on facts existing or discoverable prior to the Filing Date or that would have been claims provable in bankruptcy under the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c.B-3, had the affected Subject Party become bankrupt on the Filing Date, including, for greater certainty, any damages or punitive damages claimed, and any interest, fees, penalties, costs, and expenses accrued, incurred or otherwise arising in connection with any such claim;

(u)     **"Proof of Claim"** means the form of Proof of Claim (for Claims and Product Liability Claims, including the applicable Schedules thereto) in substantially the form attached hereto as Schedule "F";

(v)     **"Proof of Claim Document Package"** means a document package that includes a copy of the Instruction Letter, the Proof of Claim (including the applicable Schedules thereto), this Order and such other materials as the Monitor may consider appropriate or desirable;

(w)     **"Related Claim"** means any right or claim of a Subject Party against one or more of the other Subject Parties, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, and whether by guarantee, surety, subrogation, cross-claim, counterclaim, set off or otherwise, and whether or not such right is executory in nature, including the right of any Subject Party to advance a claim for contribution or indemnity or otherwise with respect to any

- 7 -

matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation is based on, arises out of or is in any way related to, in whole or in part, and whether directly or indirectly, on one or more Product Liability Claims, including, for greater certainty, any interest, fees, penalties, costs and expenses accrued, incurred or otherwise arising in connection with any such claim;

(x)    "**Subject Parties**" means, collectively, the Applicants, Applicants' Directors, Affiliates, Third Parties and Directors (each, a "**Subject Party**");

(y)    "**Supplemental Order Date**" means the date on which the U.S. District Court (or the U.S. Bankruptcy Court, if applicable) enters a supplemental order in support of this Order;

(z)    "**Third Parties**" means, collectively, the entities listed on Schedule "C" hereto;

(aa)    "**U.S. Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York;

(bb)    "**U.S. Chapter 15 Adversary Proceedings**" means the adversary proceedings pending before the U.S. District Court, Case No. 06 Civ. 539(JSR), in connection with the U.S. Chapter 15 Proceedings and these CCAA proceedings;

(cc)    "**U.S. Chapter 15 Proceedings**" means the proceedings under Chapter 15 of the United States Bankruptcy Code pending before the U.S. District Court, Case No. 06 Civ. 538(JSR), in connection with these CCAA proceedings;

(dd)    "**U.S. District Court**" means the United States District Court for the Southern District of New York; and

(ee)    "**U.S. MDL Proceedings**" means the proceedings entitled "In re Ephedra Products Liability Litigation" pending before the U.S. District Court, Case No. 04 MD 1598 (JSR).

- 8 -

## NOTICE TO CREDITORS

4.    THIS COURT ORDERS that the form and substance of each of the Notice to Creditors and the Proof of Claim Document Package is hereby approved.

5.    THIS COURT ORDERS that the publication of the Notice to Creditors and the mailing of the Proof of Claim Document Packages as set out in paragraph 6 of this Order shall constitute good and sufficient notice to Creditors of the Claims Bar Date and the related deadlines and procedures set forth herein and that no other form of notice or service need be given or made on any Person, and no other document or material need be served on any Person in respect of the call for Claims and Product Liability Claims and the claims process detailed herein.

6.    THIS COURT ORDERS that:

(a)    within five (5) Business Days of the Supplemental Order Date, the Monitor shall dispatch by ordinary mail, postage prepaid, on behalf of each of the Subject Parties, a copy of the Proof of Claim Document Package to all Known Creditors;

(b)    within five (5) Business Days of the Supplemental Order Date, the Monitor shall file electronically a copy of the Notice to Creditors and the Proof of Claim Document Package on the court dockets of the U.S. Chapter 15 Proceedings, the U.S. Chapter 15 Adversary Proceedings and the U.S. MDL Proceedings;

(c)    within five (5) Business Days of the Supplemental Order Date, the Monitor shall cause to be published on one Business Day the Notice to Creditors in each of the newspapers set out in Schedule "G" hereto;

(d)    within five (5) Business Days of the Supplemental Order Date, the Monitor shall post a copy of the Notice to Creditors and Proof of Claim Document Package on the following website: www.rsmrichter.com/current_insolvency_files.aspx; and

(e)    the Monitor shall, provided such request is received prior to the Claims Bar Date, dispatch by ordinary mail or such other manner as may be reasonably requested

- 9 -

including telecopy or email, as soon as reasonably possible following receipt of a request therefor, a copy of the Proof of Claim Document Package to any Person claiming to be a Creditor and requesting in writing such material.

7.     **THIS COURT ORDERS** that the Subject Parties shall inform the Monitor of all Known Creditors and that the Monitor shall be entitled to rely on the accuracy and completeness of the information provided by the Subject Parties regarding the Known Creditors. For greater certainty, the Monitor shall have no liability in respect of the information provided to it regarding the Known Creditors and shall not be required to conduct any independent inquiry and/or investigation with respect to that information.

### CREDITORS' CLAIMS

8.     **THIS COURT ORDERS** that Proofs of Claim for all Claims and Product Liability Claims must be properly completed and shall be filed, together with the applicable Schedules thereto and supporting documentation, with the Monitor, so as to actually be received by the Monitor on or before the Claims Bar Date; with the sole exception of the "Fact Sheet" to be submitted in connection with Product Liability Claims which shall be submitted so as to be actually received by the date that is thirty days (30) days after the Claims Bar Date. For the avoidance of doubt, a Proof of Claim (including the applicable Schedules thereto) must be filed for every Claim and Product Liability Claim, regardless of whether or not a legal proceeding in respect of a Claim or Product Liability Claim was commenced prior to the Filing Date.

9.     **THIS COURT ORDERS** that, with respect to all Product Liability Claims, in addition to filing a Proof of Claim (including the applicable Schedules thereto) in accordance with the requirements of paragraph 8 herein, all Creditors asserting a Product Liability Claim who had not commenced a legal proceeding prior to the Filing Date in respect of such Product Liability Claim, must on or before the Claims Bar Date, file a complaint in the U.S. Chapter 15 Proceedings in respect of each and any such Product Liability Claim (a "Complaint"). The Complaint must name as defendants the specific Subject Parties with respect to which relief is sought and all other parties allegedly liable to the Creditor with respect to the Product Liability Claim. No service of summons is required in connection with the Complaint; but the Complaint must be timely filed in the U.S. Chapter 15 Proceedings and served by mail, hand, or overnight

- 10 -

courier on all parties named as defendants in the Complaint. For greater certainty, the stay of proceedings provided for in the Initial Order is hereby lifted, solely to permit the foregoing and for no other purpose.

10.    THIS COURT ORDERS that any Creditor that does not file a Proof of Claim (including the applicable Schedules thereto) and a Complaint (if required to do so hereunder) as provided for herein:

    (a)    shall be and is hereby forever barred from making or enforcing any Claim as against the Applicants and the Applicants' Directors or any Product Liability Claim as against any Subject Parties released under the Plan, as approved by the requisite majorities of Creditors and this Court, and as approved by the U.S. District Court (or the U.S. Bankruptcy Court, if applicable) pursuant to supplemental order of that Court entered in aid of these proceedings;

    (b)    shall be deemed to have fully and finally released such Claim as against the Applicants and the Applicants' Directors or Product Liability Claim as against any Subject Parties released under the Plan, as approved by the requisite majorities of Creditors and this Court, and as approved by the U.S. District Court (or the U.S. Bankruptcy Court, if applicable) pursuant to supplemental order of that Court entered in aid of these proceedings, and such Claim or Product Liability Claim is forever barred and extinguished;

    (c)    shall not be entitled to any further notice in the within proceedings;

    (d)    shall not be entitled to participate as a Creditor in the within proceedings or any Other Insolvency Proceedings; and

    (e)    shall not be entitled to vote at any meetings of Creditors or to receive any distribution in respect of a Plan;

provided that, with respect to, and as an exception to, the effect of the foregoing, any and all issues and disputes regarding: (i) the sufficiency or adequacy of information provided in a "Fact Sheet" submitted in connection with a Product Liability Claim; and/or (ii) the sufficiency or

- 11 -

adequacy of medical records or medical authorizations submitted in accordance with the procedures established by this Order, shall not constitute a forfeiture of the right to assert a Product Liability Claim.

11.     **THIS COURT ORDERS** that the Monitor shall dispatch by ordinary mail an acknowledgement of receipt (but not acceptance, disallowance or revision) in respect of each Proof of Claim filed with the Monitor in accordance with the terms of this Order, which acknowledgement of receipt shall be dispatched as soon as possible following receipt by the Monitor of the Proof of Claim to which it corresponds.

12.     **THIS COURT ORDERS** that the Monitor shall not accept, disallow or revise any Claim or Product Liability Claim or take any future steps or actions with respect to any Proof of Claim (including, without limitation, accepting or disallowing any Proof of Claim) without a further Order of this Court on prior notice to those parties listed in the service list in the within proceedings as amended from time to time (which service list shall, for greater certainty, include all Persons having filed a Proof of Claim or their solicitors or attorneys of record, as the case may be).

13.     **THIS COURT ORDERS** that Claims or Product Liability Claims denominated in any currency other than Canadian dollars, shall, for the purposes of this Order, be converted to and constitute obligations in Canadian dollars, such calculation to be effected by the Monitor using the Bank of Canada noon spot rate on the Filing Date.

**TRANSFER OF CLAIMS**

14.     **THIS COURT ORDERS** that if, after the Filing Date, the holder of a Claim or Product Liability Claim on the Filing Date, or any subsequent holder of the whole of a Claim or Product Liability Claim who has been or subsequently is acknowledged by the Monitor as the Creditor in respect of such Claim or Product Liability Claim, transfers or assigns the whole of such Claim or Product Liability Claim to another Person, neither the Subject Parties nor the Monitor shall be obligated to give notice to or to otherwise deal with the transferee or assignee of any such Claim or Product Liability Claim as the Creditor in respect thereof unless and until written notice of transfer or assignment, together with satisfactory evidence of such transfer or assignment, shall

- 12 -

have been received from the transferor or assignor and acknowledged by the Monitor and thereafter such transferee or assignee shall for the purposes hereof constitute the "Creditor" in respect of such Claim or Product Liability Claim, as the case may be. Any such transferee or assignee of a Claim or Product Liability Claim, and such Claim or Product Liability Claim, shall be bound by any notices given or steps taken in respect of such Claim or Product Liability Claim in accordance with this Order prior to receipt and acknowledgement by the Monitor of satisfactory evidence of such transfer or assignment. The Monitor shall thereafter be required only to deal with the transferee and not the original holder of the Claim or Product Liability Claim, as the case may be.

## BINDING EFFECT OF CALL FOR CLAIMS

15.    **THIS COURT ORDERS** that, subject to further order of this Court, nothing in this Order shall be interpreted as consolidating any Claims or Product Liability Claims against any one or more of the Subject Parties or against any of their respective assets, property and undertaking; provided, that nothing herein shall preclude the Applicants or the Monitor from hereafter seeking consolidation of Claims or Product Liability Claims against any one or more of the Subject Parties or against any of their respective assets, property and undertaking.

16.    **THIS COURT ORDERS** that if the Applicants' Plan is not approved and the Applicants enter into an Other Insolvency Proceeding, this call for claims process, and the Claims and Product Liability Claims submitted pursuant to this call for claims process, may constitute and be deemed to be the complete and final claims process for any such Other Insolvency Proceedings; subject to approval of this Order and the claims process established herein and conducted hereunder by further Order of this Court and supplemental Order of the U.S. District Court (or the U.S. Bankruptcy Court, if applicable) entered in connection with those Other Insolvency Proceedings.

## SERVICE AND NOTICE

17.    **THIS COURT ORDERS** that the Monitor be at liberty to deliver this Order, the Notice to Creditors, the Proof of Claim Document Package and any other letters, notices or other documents to Creditors and other interested Persons by forwarding true copies thereof by prepaid