# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW TOTH, et al.                  :        CIVIL ACTION
                                     :
        v.                           :
                                     :        No. 06-1617
BODYONICS, LTD., et al.              :

**MEMORANDUM**

Ludwig, J.                                              March 15, 2007

Plaintiffs move to remand this action to state court. Defendant General Nutrition

Companies, Inc. moves to transfer to the Southern District of New York.[1]

In July 2002, plaintiffs filed a consumer class action complaint in the Court of

Common Pleas of Philadelphia County, captioned Toth v. Bodyonics, Ltd., et al., CP Phila.,

July Term, 2002, No. 3886. The complaint alleges the deceptive and unfair marketing of

"Steroid Hormone Products" as a legal and effective muscle builder, when the steroids, in

fact, were "ineffective" for this purpose and, if effective, were "illegal." Complaint, Exhibit

"A" to Notice of Removal, ¶ 4.

On April 17, 2006, GNC removed the action to this court as "related to" bankruptcy

proceedings involving MuscleTech Research and Development, Inc., the manufacturer and

supplier of the steroids at issue.[2] On the same date, GNC moved to transfer this case to the

---

[1] Plaintiffs are Andrew Toth and Richard Zatta, on behalf of themselves and all persons
who have purchased Steroid Hormone Products within the State of Pennsylvania during the class
period. Defendants are Bodyonics, Ltd., d/b/a Pinnacle, and General Nutrition Companies, Inc.
Bodyonics has not filed an appearance.

[2] On January 18, 2006, MuscleTech filed for bankruptcy protection in the Southern
District of New York under Chapter 15 of Title 11 of the Bankruptcy Code. The New York case

Southern District of New York.

GNC urges transfer to New York because the action is "related to" the MuscleTech bankruptcy. 28 U.S.C. §§ 157(a), 1334(b), 1409 and 1412. Additionally, the transfer would satisfy the interests of justice in that New York is the "home court" of the bankruptcy; it is judicially efficient to have all related cases in one forum; and a state court has no jurisdiction in a bankruptcy proceeding. Motion to Transfer, ¶¶ 11, 13, 15-18. Moreover, transfer to New York would be forum conveniens for the parties because all of them now travel there for the bankruptcy hearings and for other related cases already transferred to that jurisdiction.[3]

According to plaintiffs, the action should be remanded to state court because federal jurisdiction is lacking - MuscleTech is not a party in this action, and this action alone will not affect the administration of the bankruptcy. Memorandum in Support of Motion to Remand, ¶¶ 6, 7. In the alternative, if jurisdiction exists, abstention is appropriate because state law

---

was removed to the United States District Court for the Southern District of New York and is pending at No. 06-Civ-538 (JSR) before the Honorable Jed S. Rakoff. Notice of Removal, ¶ 3. On May 31, 2006, counsel filed in this court a "Notice of Stay of Proceedings" referencing a stay issued in the bankruptcy case. Judge Rakoff directed that a copy of the order be filed in all product liability cases involving the "research, marketing, manufacture, sale and distribution" of products such as those involved in this case. Notice of Stay of Proceedings. Additionally, MuscleTech has commenced proceedings under Canada's Companies' Creditors Arrangement Act. A March 3, 2006 Call to Claims Order issued in that case identifies GNC as a Subject Party required to file a proof of claim. Memorandum in Opposition to Plaintiffs' Motion to Remand, Exhibit "B," pp. 5-6, 14.

[3] New Jersey and Florida district courts have transferred virtually identical cases to the Southern District of New York. Abrams v. General Nutrition Companies, Inc., U.S.D.C., D.N.J., C.A. No. 06-1820 (MLC), filed Sept. 25, 2006); Brown v. General Nutrition Companies, Inc., U.S.D.C., S.D. Fla., C.A. No. 06-80391-CIV-RYSKAMP/ITUNAC, filed Oct. 19, 2006).

issues predominate and transfer would prejudice plaintiffs. Memorandum in Support of Motion to Remand, ¶¶ 8, 9.

GNC replies that this case is "related to" the MuscleTech bankruptcy because GNC has a contractual indemnification claim for damages against MuscleTech.[4] Opposition to Motion to Remand, ¶¶ 6-10. Additionally, abstention and remand would not be in the interests of justice because of this action's relation to the MuscleTech case, and the ability of the New York court to comprehend all issues, including the state court claims. Opposition to Motion to Remand, ¶¶ 18-25. A further consideration is that this action has been pending in state court for nearly five years, discovery is not complete, and no class has been certified. Opposition to Motion to Remand, ¶¶ 26-30.

For the following reasons, GNC's motion to transfer will be granted; and plaintiff's motion to remand will be denied.

I.    Jurisdiction

A party may remove an action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334, in turn, vests the district court with original jurisdiction "of all civil proceedings arising under Title 11, or arising in or

---

[4] The purchase order form GNC used to purchase MuscleTech products contains an indemnity clause. Memorandum in Opposition to Plaintiffs' Motion to Remand, Exhibit "A", ¶ 12 ("The Seller agrees to indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon, and such indemnity shall survive acceptance of the goods and payment therefore by the Buyer.")

3

related to cases under Title 11." 28 U.S.C. § 1334(a), (b). "Related to" jurisdiction exists where "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." This proceeding is alleged by GNC to be "related to" the MuscleTech bankruptcy because of the contractual indemnification agreement in the purchase order. See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).[5] However, not all indemnification agreements will necessarily create "related to" jurisdiction. In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002); Steel Workers Pension Trust, 295 Bkrtcy. 747, 750 (E.D. Pa. 2003)("An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction. Only when the right to indemnification is clearly established and accrues upon the filing of the civil action is the proceeding related to the bankruptcy estate.")

Under this test, "related to" jurisdiction exists in this action. The language of the indemnification provision, supra, n.4, will create liability for the MuscleTech bankrupt estate if plaintiff prevails in this products liability case. There should be no need for a separate, subsequent indemnification action. Therefore, the outcome of this case will affect the MuscleTech bankruptcy. It is sufficiently "related to" the MuscleTech bankruptcy to establish jurisdiction under § 1334.

---

[5] In Pacor, the court held that the dispute in question not to be related to the bankruptcy under this standard, and distinguished it from cases such as this one, in which an explicit indemnification agreement itself created liability for the bankruptcy estate. Id. at 995.

II.    Abstention

"Upon a timely motion under 28 U.S.C. § 1334(c)(2), a district court must abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under Title 11, but does not 'arise under' Title 11 and does not 'arise in' a case under Title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006). Here, requirement 5 is not met. The state court action has been pending for a number of years, and has not progressed very far. Therefore, mandatory abstention is not required.

Plaintiff also suggests discretionary abstention under § 1334(c), and equitable remand. The factors are the same for both: (1) the effect on the administration of the bankruptcy estate; (2) the extent to which state law issues predominate the action; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts; (5) the action's degree of relatedness to the main bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the involuntarily removed parties. In re Mid-Atlantic Handling Sys., LLC, 304 Bkrtcy. 111, 126 (D.N.J. 2003). Here, because of contractual indemnity, this action directly affects the administration of the bankruptcy estate. While state law issues predominate, the law is well-settled and can readily be applied by a federal court. Given the

long history of the case in state court, with no resolution appearing imminent, remand would

not necessarily result in a more expeditious conclusion of the case, and removal would not

unfairly prejudice plaintiffs. Therefore, discretionary abstention and equitable remand are

inappropriate.

III.    Transfer

        A district court may "transfer a case or proceeding under [the Bankruptcy Code] to

a district court for another district, in the interest of justice or for the convenience of the

parties." 28 U.S.C. § 1412. Section 1412 applies to cases "related to" a bankruptcy

proceeding. Howard Brown Co. v. Reliance Ins. Co., 66 Bkrtcy. 480, 482 (E.D. Pa. 1986).

Section 1404(a) also permits transfer for the convenience of the parties and witnesses, or in

the interest of justice, to another district where the case could have been brought. 28 U.S.C.

§ 1404(a). Here, too, the analysis under both sections is the same, the factors being: (1)

plaintiff's choice of forum; (2) defendant's preference; (3) whether the underlying claim

arose elsewhere; (4) relative physical and financial conditions of the parties; (5) convenience

of witnesses; (6) location of books and records; (7) enforceability of any judgment obtained;

(8) practical considerations making trial easy, expeditious or inexpensive; (9) administrative

difficulty arising from court congestion; (10) local interest in controversy; (11) public

policies in each forum; and (12) familiarity of trial court with applicable law. Jumara v. State

Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). Generally, the district where the

bankruptcy is pending is the appropriate venue for all related proceedings. 1 Collier on

6

Bankruptcy ¶ 4.02 (15th ed. Rev. 2005).

Here, venue is proper in the Southern District of New York. Additionally, important factors weigh in favor of transfer - the practical considerations that facilitate making trial more expeditious and less expensive. Neutral factors include: a lack of purely local interest (given the widespread character of the issues involved); that the claims did not arise in this forum; the familiarity of the trial court with the law, in light of the frequent application by federal courts of state law and the settled nature of the law; the congestion of the New York court (not discussed by either party); the convenience of witnesses (also not discussed); and the location of books and records (Pittsburgh, GNC's headquarters, is not that distant from New York). Plaintiffs, who are Pennsylvania residents, will not be unfairly inconvenienced, given the proximity of Pennsylvania to New York. Accordingly, transfer is warranted in this case.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW TOTH, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 06-1617 |
| BODYONICS, LTD., et al. | : | |

### ORDER

AND NOW, this    15th    day of March, 2007, the "Motion to Transfer Venue to the

Southern District of New York" filed by defendant General Nutrition Companies, Inc. is

granted. "Plaintiffs' Motion to Remand" is denied. This action shall be transferred to the

United States District Court for the Southern District of New York. The Clerk of the Court

shall mark this action closed for all purposes.

A memorandum accompanies this order.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

8

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EVERETT ABRAMS | : | CIVIL ACTION NO. 06-1820 (MLC) |
| | : | |
| Plaintiff, | : | **ORDER & JUDGMENT** |
| | : | |
| v. | : | |
| | : | |
| GENERAL NUTRITION COMPANIES, INC., | : | |
| | : | |
| Defendant. | : | |

For the reasons stated in the Court's memorandum opinion, **IT IS** on this    22nd    day of September, 2006, **ORDERED** that the motion to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1404, 1409, and 1412 (dkt. entry no. 2) is **GRANTED**; and

**IT IS FURTHER ORDERED** that the cross motion to remand this action to New Jersey Superior Court (dkt. entry no. 7) is **DENIED**; and

**IT IS FURTHER ADJUDGED** that the action be **TRANSFERRED** to the United States District Court for the Southern District of New York; and

**IT IS FURTHER ORDERED** that the Clerk of the Court designate this action as **CLOSED**.

                                            s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
EVERETT ABRAMS                  :    CIVIL ACTION NO. 06-1820 (MLC)
                                :
        Plaintiff,              :         MEMORANDUM OPINION
                                :
        v.                      :
                                :
GENERAL NUTRITION COMPANIES,    :
INC.,                           :
                                :
        Defendant.              :
                                :
```

**COOPER, District Judge**

  Plaintiff, Everett Abrams ("Abrams"), seeks to certify a
class and obtain damages on behalf of himself and others
similarly-situated who purchased certain nutritional supplements
from defendant, General Nutrition Companies, Inc. ("GNC"),
including supplements manufactured and distributed by MuscleTech
Research and Development, Inc. and its affiliated entities
("MuscleTech").  (GNC Transfer Br., at 4.)  GNC moves to transfer
this action to the United States District Court for the Southern
District of New York pursuant to 28 U.S.C. §§ ("Sections") 1404,
1409, and 1412.  (Dkt. entry no. 2.)  Abrams, however, cross-
moves to remand this action to the New Jersey Superior Court (the
"state court") from which it was removed.  (Dkt. entry no. 7.)
For the reasons stated herein, the Court will (1) grant the
motion to transfer, and (2) deny the cross motion to remand.

## BACKGROUND

Abrams commenced this action against GNC in the state court on December 20, 2002.  (GNC Transfer Br., at 2.)  Abrams alleges that GNC marketed and sold products containing one or more steroid hormones ("Steroid Hormone Products"), including products manufactured by MuscleTech, which were deceptively marketed as effective to promote muscle growth.  (Marks Decl., Ex. 1, at ¶ 31.)  Abrams further alleges that GNC knew the Steroid Hormone Products did not produce the desired effect of increasing muscle growth and strength, and that if they did produce such desired effect they would be illegal anabolic steroids, but continued to sell them to consumers without providing any qualifying information.  (Id. at ¶¶ 40-42.)  Abrams contends that GNC's misrepresentations, omissions and deceptive trade practices constitute violations of the New Jersey Consumer Fraud Act, and thus, Abrams and those similarly situated are entitled to actual and treble damages, as well as attorneys' fees and costs.  (Id. at ¶¶ 61-69.)  The original complaint named the manufacturers of the Steroid Hormone Products, including MuscleTech, as defendants, but the state court granted GNC's motion to sever the claims against it.  (Abrams Br., at ¶ 1.)

The purchase order form GNC used to purchase MuscleTech products for sale in its stores contains an indemnity clause. (GNC Transfer Br., at 2.)  The indemnity clause provides:

2

> The Seller agrees to indemnify the Buyer from and
> against all liability, loss and damage including
> reasonable counsel's fees resulting from the sale or
> use of the products or any litigation based thereon,
> and such indemnity shall survive acceptance of the
> goods and payment therefore by the Buyer.

(GNC Remand Br., Ex. A, at ¶ 12.)  Accordingly, GNC asserts that

MuscleTech is obligated to indemnify it for any liability it

incurs in connection with this action.  (GNC Transfer Br., at 2.)

MuscleTech filed a petition on January 18, 2006 under

chapter 15 of the United States Bankruptcy Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Southern

District of New York.  (Id. at 3.)  Simultaneously, MuscleTech

commenced a proceeding under Canada's Companies' Creditors

Arrangement Act in Canada's Superior Court of Justice (the "CCAA

proceeding").  (GNC Remand Br., at ¶ 4.)  The bankruptcy case was

subsequently removed to the United States District Court for the

Southern District of New York (the "bankruptcy case") and

assigned to Judge Jed S. Rakoff (case no. 06-538 (JSR)).  (GNC

Transfer Br., at 3.)  Also, on April 18, 2006, GNC removed this

action from the state court to this Court asserting that this

Court has jurisdiction over the matter because it is "related to"

MuscleTech's bankruptcy case.  (Id. at 2-3.)  During the four

years this action was pending in the state court, no class was

certified and discovery was not completed.  (GNC Remand Br., at ¶

29.)

3

Judge Rakoff issued an order in the bankruptcy case on January 18, 2006, staying prosecution of any products liability action against MuscleTech, GNC, and various other parties currently defendants in actions that could indirectly affect the MuscleTech bankruptcy case. (GNC Remand Br., at ¶ 15.)  On March 2, 2006, Judge Rakoff issued an order clarifying the scope and extent of the stay, and directed MuscleTech's counsel to file a copy of that order in all products liability actions affected by the order, including this action. (Id. at ¶ 16; Marks Decl., Ex. 2.)  Judge Rakoff issued several additional orders further extending the stay, most recently to November 10, 2006. (Case No. 06-538 (JSR), dkt entry no. 114).  Moreover, on March 3, 2006, the Canadian court in the CCAA proceeding issued an order (the "Proof of Claim Order") directing all persons holding products liability claims against "any of the Subject Parties" to file proofs of claim with the monitor appointed there. (GNC Remand Br., at ¶ 12.)  The Proof of Claim Order defines "Subject Parties" as including both MuscleTech and GNC. (Id., Ex. B., at 7, Sch. A and Sch. C.)[1]

GNC now moves to transfer this action to the United States District Court for the Southern District of New York arguing, inter alia, that because this action is "related to" the

_____

[1] Although the terms of the Proof of Claim Order permitted Abrams to do so, this Court is not aware of whether he filed a proof of claim in the CCAA proceeding.

4

MuscleTech bankruptcy case, transfer to the district where the
bankruptcy case is pending would promote the interest of justice
and convenience of the parties.    (Dkt. entry no. 2.)    GNC also
filed motions seeking to transfer similar proceedings pending in
Pennsylvania, Illinois, California, and Florida to the Southern
District of New York.    (GNC Transfer Br., at 4)    According to
GNC, the plaintiffs in each of these actions (1) allege the same
basic facts, (2) assert the same legal arguments, and (3) are
represented by the same law firms, as Abrams.    (GNC Remand Br.,
at ¶ 3.)    Abrams, on the contrary, cross-moves to remand this
action to the state court asserting that this Court cannot
exercise jurisdiction.    (Dkt. entry no. 7.)

**DISCUSSION**

Abrams argues that this Court lacks bankruptcy jurisdiction
over this action because MuscleTech is not a party here and the
outcome will not affect the administration of MuscleTech's
bankruptcy estate.    (Abrams Br., at ¶ 3.).    Thus, Abrams argues
that this Court should remand this action to the state court due
to lack of jurisdiction, or abstain from hearing the matter.
(Id. at 1.)    GNC contends that this Court can properly exercise
jurisdiction here because GNC's contractual right to be
indemnified by MuscleTech is sufficient to deem this action
"related to" MuscleTech's bankruptcy case.    (GNC Remand Br., at ¶
6.)    GNC further contends that because this action is "related

5

to" the bankruptcy case, it should be transferred to the Southern District of New York. (GNC Transfer Br., at 10.)

## I.    Mandatory Remand for Lack of Bankruptcy Jurisdiction

### A.    Legal Standards Governing Remand and Bankruptcy Jurisdiction

Section 1447(c) provides, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . . The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). When a motion for remand is filed, the removing party bears the burden of establishing the elements of subject matter jurisdiction. Russ v. Unum Life Ins. Co., No. 06-1308, 2006 U.S. Dist. LEXIS 50191, at *6 (D.N.J. July 11, 2006); see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (noting that "a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists"). Further, the removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer, 913 F.2d at 111.

A party may remove an action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334." 28 U.S.C. § 1452(a). Section 1334 gives district courts (1) original and exclusive jurisdiction of all cases brought "under" a chapter of the Bankruptcy Code, (2) original

but not exclusive jurisdiction of all civil proceedings "arising

under" the Bankruptcy Code, and (3) original but not exclusive

jurisdiction of all proceedings "arising in" or "related to"

cases under the Bankruptcy Code.  28 U.S.C. § 1334(a) & (b).[2]

"Arising under" refers to proceedings expressly created by the

Bankruptcy Code.  Steel Workers Pension Trust v. Citigroup, Inc.,

295 B.R. 747, 750 (E.D. Pa. 2003).  "Arising in" refers to

proceedings involving the administration of the bankruptcy

estate.  Id.  However, a "related to" proceeding is one that

---

[2] District courts may provide that all cases "under" the
Bankruptcy Code and all proceedings "arising under", "arising in"
or "related to" cases under the Bankruptcy Code must be referred
to the bankruptcy judges for that district.  28 U.S.C. § 157(a).
Proceedings "arising under" the Bankruptcy Code or "arising in" a
Bankruptcy Code case are considered core proceedings because they
invoke a substantive right provided by the Bankruptcy Code, or by
their nature could arise only in the context of a bankruptcy
case.  Copelin v. Spirco, Inc., 182 F.3d 174, 180 (3d Cir. 1999);
see also 28 U.S.C. § 157(b)(1).  Section 157 provides a non-
exhaustive list of core proceedings.  28 U.S.C. § 157(b)(2).
Proceedings that are only "related to" a bankruptcy case are
considered noncore proceedings.  Copelin, 182 F.3d at 180.
Bankruptcy courts can enter final judgments in core proceedings,
subject to the district court's appellate review.  In re
Allegheny Health, Educ. & Research Found., 383 F.3d 169, 175 (3d
Cir. 2004); Copelin, 182 F.3d at 179.  On the contrary, in a
noncore proceeding a bankruptcy court can only issue proposed
findings of fact and conclusions of law to the district court
unless the parties consent to the case being referred to the
bankruptcy court.  In re Allegheny Health, 383 F.3d at 175;
Copelin, 182 F.3d at 179.  The issue here is whether a district
court can properly exercise bankruptcy jurisdiction over this
action.  Thus, the core/noncore distinction set forth in Section
157 and the case law interpreting Section 157 is not relevant.
See In re Allegheny Health, 383 F.3d at 175 (explaining that
whether a proceeding is core or noncore represents an entirely
separate question from that of subject-matter jurisdiction).

exists outside of the bankruptcy process and does not invoke any
substantive rights created by the Bankruptcy Code, but its
outcome could conceivably affect the bankruptcy estate.  Id.

The test for determining whether a federal court can
exercise jurisdiction over a proceeding that is simply "related
to" a bankruptcy case was originally set forth in Pacor, Inc. v.
Higgins, 743 F.2d 984 (3d Cir. 1984).[3]  In Pacor, John and Louise
Higgins ("Higgins") commenced a Pennsylvania state court action
against a chemical supplies distributor, Pacor, Inc. ("Pacor"),
for damages caused by Mr. Higgins's work-related exposure to
asbestos supplied by Pacor.  Id. at 986.  Pacor impleaded the
Johns-Manville Corporation ("Johns-Manville"), the original
manufacturer of the asbestos.  Id.  Thereafter, Johns-Manville
filed a chapter 11 bankruptcy petition in the United States
Bankruptcy Court for the Southern District of New York.  Id.  As
a result, Pacor simultaneously (1) removed the state court action
to the United States Bankruptcy Court for the Eastern District of
Pennsylvania, and (2) moved to transfer the action to the
Southern District of New York where it could be joined with the
Johns-Manville bankruptcy case.  Id.

---

[3] This case appears to be overruled in part on other
grounds.  See, e.g., In re Velocita Corp., 169 Fed.Appx. 712, 715
(3d Cir. 2005) (noting that Pacor was overruled on other grounds
by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35
(1995)).  But see In re Federal-Mogul, Inc., 300 F.3d 368, 381
(3d Cir. 2002) (stating that "Pacor clearly remains good law in
this circuit").

The Eastern District of Pennsylvania bankruptcy court determined that Pacor's removal petition was untimely, and thus, remanded the case to state court. Id. On appeal, the district court stated that Pacor's removal petition was not time-barred, but concluded that Higgins's claims against Pacor were not "related to" the Johns-Manville bankruptcy case. Id. Therefore, because the district court determined that the bankruptcy court did not have jurisdiction to address Higgins's claims against Pacor, it remanded that portion of the case to the state court. Id. Pacor appealed. Id. at 987.

The Third Circuit, in addressing Pacor's appeal, stated, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Id. at 994.[4] However, the court noted that a bankruptcy court's jurisdiction over "related to" cases is not unlimited. Id. The court stated that the test for determining whether "related to" jurisdiction exists is "whether the outcome of that proceeding could conceivably have any effect on the

---

[4] The Pacor court examined the predecessor to Section 1334(b), former Section 1471(b). Id. Former Section 1471(b) contained nearly identical language to Section 1334(b), except that it granted jurisdiction to bankruptcy courts rather than district courts over civil proceedings "arising under", or "arising in or related to" the Bankruptcy Code. Thus, the Pacor analysis is applicable to jurisdictional questions under Section 1334(b).

estate being administered in bankruptcy." Id. The court
explained that a proceeding does not necessarily have to be
against the debtor or the debtor's property because "related to"
jurisdiction exists if the proceeding could alter the debtor's
rights or liabilities, or in any way impact the administration of
the bankruptcy estate. Id. The court concluded that the primary
action between Higgins and Pacor was not "related to" the Johns-
Manville bankruptcy case, and therefore, the bankruptcy court
could not exercise jurisdiction over that action. Id. at 995.
The court emphasized that even if the Higgins/Pacor dispute was
resolved in favor of Higgins, the Johns-Manville bankruptcy
estate would not be affected in any way until Pacor brought a
subsequent action seeking indemnification from Johns-Manville.
Id. The court distinguished those cases where "related to"
jurisdiction was founded upon the defendant having an explicit
indemnification agreement automatically creating liability for
the bankruptcy debtor. Id. Thus, because Higgins's action
against Pacor was not "related to" the Johns-Manville bankruptcy
case, the court affirmed the district court's order remanding the
action to state court. Id. at 996.

    The Third Circuit clarified the test it set forth in Pacor
in In re Federal-Mogul Global, Inc. 300 F.3d 368. In Federal-
Mogul, thousands of individuals commenced personal injury and
wrongful death actions in state courts against various

manufacturers and distributors of friction products containing
asbestos, including Federal-Mogul Global, Inc. ("Federal-Mogul"),
as well as companies that manufactured and sold products
containing these friction products.  Id. at 372.  After Federal-
Mogul and its affiliates and subsidiaries filed chapter 11
bankruptcy petitions, the plaintiffs began severing or dismissing
their claims against them.  Id. at 372-73.  Many of the remaining
defendants removed the actions against them to the appropriate
federal district court pursuant to Section 1452(a), arguing that
these actions were "related to" Federal-Mogul's bankruptcy case.
Id. at 373.  Specifically, the defendants argued that they would
be entitled to seek indemnification or contribution from Federal-
Mogul if they were found liable because they had purchased some
of the friction products at issue in their respective actions
from Federal-Mogul.  Id.  The plaintiffs moved for remand in each
of these actions.  Id. at 373.  While the motions were pending,
many of these cases were transferred to the District of Delaware,
which concluded that it lacked jurisdiction, and thus, remanded
the cases to the state courts where they were originally
commenced.  Id. at  373-76.  The defendants appealed the Delaware
district court's order.  Id. at 376.

     The Third Circuit noted, in addressing the appeal, that
"Pacor clearly remains good law in this circuit."  Id. at 381.
The court further noted that the Supreme Court had both endorsed

11

the Pacor test and acknowledged that nearly all of the courts of
appeals have adopted it with little or no variation with the
exception of the Second and Seventh Circuits, which adopted
slightly different tests. Id. (citing Celotex Corp. v. Edwards,
514 U.S. 300, 308-09 (1995)). The court then stated, "[t]he test
articulated in Pacor for whether a lawsuit could 'conceivably'
have an effect on the bankruptcy proceeding inquires whether the
allegedly related lawsuit would affect the bankruptcy proceeding
without the intervention of yet another lawsuit." Id. at 382.
Thus, the court established that a right to indemnification from
a bankruptcy debtor does not necessarily create "related to"
bankruptcy jurisdiction. Id.; see also Steel Workers Pension
Trust, 295 B.R. at 750 ("An indemnification agreement between a
defendant and a non-party bankrupt debtor does not automatically
supply the nexus necessary for the exercise of 'related to'
jurisdiction. Only when the right to indemnification is clearly
established and accrues upon the filing of the civil action is
the proceeding related to the bankruptcy case.") Therefore,
because any indemnification claims the defendants in the personal
injury and wrongful death actions might have against Federal-
Mogul had not yet accrued and would require additional actions,
the court concluded that it could not exercise "related to"
jurisdiction over those cases. Id.

Pacor established that not all indemnification agreements
between a defendant in a personal injury or products liability

12

action and a non-party bankruptcy debtor create a basis for a

federal district court to exercise "related to" bankruptcy

jurisdiction over a matter pursuant to Section 1334(b). Steel

Workers Pension Trust, 295 B.R. at 753. The right to

indemnification must accrue upon the bringing of the civil action

for it to be considered "related to" the bankruptcy case. Id. at

750. Thus, a proceeding is sufficiently "related to" a

bankruptcy case to establish jurisdiction when a party's right to

indemnification from the bankruptcy debtor is express and is not

contingent on the commencement of a separate action requiring

additional fact-finding. Id. at 753; see also In re Combustion

Engr., Inc., 391 F.3d 190, 232 (3d Cir. 2004) (concluding that

"any indemnification claims against [the debtor] resulting from a

shared production facility would require the intervention of

another lawsuit to affect the bankruptcy estate, and thus cannot

provide a basis for 'related to' jurisdiction"); In re Allegheny

Health, 383 F.3d at 176 n.7 (finding that "related to" bankruptcy

jurisdiction existed over action by party seeking indemnity from

a bankruptcy debtor because the indemnity claim had already

matured).

**B.    Federal Bankruptcy Jurisdiction Here**

This Court has "related to" bankruptcy jurisdiction

over this action under the test articulated in Pacor. MuscleTech

contractually agreed to indemnify GNC for "all liability, loss

and damage including reasonable counsel's fees resulting from the
sale or use of the [MuscleTech] products." (GNC Remand Br., Ex.
A, at ¶ 12.) This language automatically creates liability for
the MuscleTech bankruptcy estate if Abrams prevails in his claims
against GNC. Unlike in Pacor, there would be no need for a
subsequent action seeking indemnification against MuscleTech
before the bankruptcy estate would be affected. Therefore, this
action is sufficiently "related to" the MuscleTech bankruptcy
case to establish jurisdiction because GNC's right to
indemnification from MuscleTech is not contingent upon the filing
of an additional complaint, and thus, this action will affect the
MuscleTech bankruptcy case if Abrams succeeds in proving his
claims.

The orders Judge Rakoff issued staying prosecution of any
products liability action against MuscleTech, GNC, and various
other parties also indicate that resolution of this action and
the other products liability actions against GNC currently
pending in other jurisdictions will directly affect the
MuscleTech bankruptcy case. (See GNC Remand Br., at ¶ 15.)
Because MuscleTech is not a named defendant in these actions, the
only plausible basis for staying the products liability actions
against GNC is that any recovery the plaintiffs obtain against
GNC will automatically increase MuscleTech's liabilities and
reduce the amount available for distribution to MuscleTech's

14

creditors.  If it was necessary for GNC to bring separate actions

seeking indemnity from MuscleTech, then it would be appropriate

only for Judge Rakoff to stay those actions rather than the

initial proceedings against GNC.  Further, the Proof of Claim

Order issued in the CCAA proceeding directs all persons holding

products liability claims against "any of the Subject Parties",

which includes GNC, to file proofs of claim against MuscleTech.

(GNC Remand Br., at ¶ 12.)  Accordingly, the Canadian court

acknowledges that all parties that succeed in their products

liability claims against GNC will indirectly receive payment on

their claims from the MuscleTech bankruptcy estate in the same

manner as creditors holding direct claims against MuscleTech or

its affiliates.  Thus, Judge Rakoff's stay orders and the Proof

of Claim Order reflect that resolution of this action could

automatically impact MuscleTech's bankruptcy case.  Accordingly,

this Court has "related to" bankruptcy jurisdiction over this

action.

## II.  Mandatory Abstention

Section 1334(c)(2) requires a district court to abstain

if the action is (1) based on a state law claim or cause of

action, (2) "related to" a case under the Bankruptcy Code, but

does not "arise under" or "arise in" a case under the Bankruptcy

15

Code[5], (3) one where federal courts would not have jurisdiction
apart from bankruptcy jurisdiction, (4) commenced in a state
forum with appropriate jurisdiction, and (5) one that can be
timely adjudicated in a state forum. Stoe v. Flaherty, 436 F.3d
209, 213 (3d Cir. 2006). "On its face [Section 1334] mandates
abstention in removed cases as well as those filed initially in
federal court." Id.

Abrams's claims against GNC arise under the New Jersey
Consumer Fraud Act, and thus, are based solely on state law.
Abrams commenced this action in a New Jersey state court that
could appropriately exercise jurisdiction over his claims. Also,
as discussed more fully above, this action is "related to"
MuscleTech's bankruptcy case, but it does not "arise under" or
"arise in" a case under the Bankruptcy Code. Therefore,
requirements one, two and four above are met. However, the state
court, by no fault of its own, was not able to timely adjudicate
this action. After nearly three and a half years, no class was
certified and discovery was not complete. (GNC Remand Br., at ¶
29.) Moreover, although neither party has addressed whether any
independent basis for federal jurisdiction exists, it appears
diversity jurisdiction would also provide a basis. See 28 U.S.C.

---

[5] "Congress, by virtue of its use of the 'arising under' and
'arising in' language in section 1334(c)(2), incorporated the
core/non-core distinction into the mandatory abstention test."
Balcor/Morristown LP v. Vector Whippany Assoc., 181 B.R. 781, 790
(D.N.J. 1995).

§ 1332 (stating that district courts have jurisdiction over all
actions involving citizens of different states where the amount
in controversy exceeds $75,000).[6]  GNC is a Pennsylvania
corporation with its principal place of business in Pittsburgh
(Marks Decl., Ex. 1, at ¶ 6.)  Abrams, however, is a citizen of
Burlington County, New Jersey.  (Marks Decl., Ex. 1, at ¶ 8.)
Assuming the amount in controversy exceeds $75,000, which appears
likely, it is plausible that this action could have been brought
in federal court under Section 1332.  Therefore, the third and
fifth requirements for mandatory abstention have not been met.

## III. Discretionary Abstention and Equitable Remand

Section 1334(c) provides:

[e]xcept with respect to a case under [chapter 15 of
the Bankruptcy Code], nothing in this section prevents
a district court in the interest of justice or in the
interest of comity with State courts or respect for
State law, from abstaining from hearing a particular
proceeding arising under . . . or arising in or related
to a case under [the Bankruptcy Code].

28 U.S.C. § 1334(c)(1).  Thus, Section 1334(c)(1) gives this
Court discretion to abstain from hearing an action that is
"related to" a bankruptcy case.  See Jazz Photo Corp. v. Dreier

---

[6] This Court acknowledges that notice of removal of an
action must be filed within thirty days of either service of the
summons or the defendant's receipt of the complaint.  See 28
U.S.C. § 1446(a).  Thus, the time period for asserting removal of
this action on the basis of Section 1332 has expired.
Nevertheless, this Court will still consider whether jurisdiction
under Section 1332 could have existed for purposes of determining
whether mandatory abstention is appropriate.

17

LLP, No. 05-5198, 2005 U.S. Dist. LEXIS 36396, at *19-*20 (D.N.J.

Dec. 23, 2005) (discussing permissive abstention provision of

Section 1334 and listing factors for deciding whether to exercise

discretionary abstention).  The only exception to this Court's

ability to exercise discretionary abstention is that it cannot

abstain from hearing a case "under" chapter 15 of the Bankruptcy

Code.  28 U.S.C. § 1334(c)(1); 15 Collier on Bankruptcy ¶ 3.05[1]

(15th ed. rev. 2006).  Although MuscleTech filed a chapter 15

bankruptcy petition, as discussed above, this action is only

"related to", not "under" that bankruptcy case.  Accordingly, the

chapter 15 exception to the discretionary abstention doctrine

does not apply here.

     A court to which a claim or cause of action is removed on

the basis of bankruptcy jurisdiction "may remand such claim or

cause of action on any equitable ground."  28 U.S.C. § 1452(b).

Essentially the same considerations and standards are relevant in

determining whether discretionary abstention under Section

1334(c) and equitable remand under Section 1452(b) are

appropriate.  Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at

*19; Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am.,

Inc. (In re Mid-Atlantic Handling Sys., LLC), 304 B.R. 111, 126

(Bankr. D.N.J. 2003) (noting that the doctrines of discretionary

abstention and equitable remand require a similar conclusion).

There are a number of factors in deciding whether to exercise

18

discretionary abstention and equitable remand, including (1) the
effect on the administration of the bankruptcy estate, (2) the
extent to which state law issues predominate the action, (3) the
difficulty or unsettled nature of applicable state law, (4)
comity with state courts, (5) the action's degree of relatedness
to the main bankruptcy case, (6) the existence of a right to a
jury trial, and (7) prejudice to the involuntarily removed
parties.  Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at *20;
In re Mid-Atlantic Handling Sys., LLC, 304 B.R. at 126.  Both
discretionary abstention and equitable remand are only
appropriate to "a narrow sphere of cases."  Balcor/Morristown LP,
181 B.R. at 793.  The court will look to the "reality of the
controversy, rather than base [a] decision on superficial
features that appear to place it in one category or another."
Id. at 794.

     This action has a direct relation to the bankruptcy case.
If Abrams prevails against GNC, the judgment in his favor will
create automatic liability for MuscleTech's bankruptcy estate.
As previously discussed, GNC has an express contractual right to
indemnification from MuscleTech for all liability arising from
its sale of the MuscleTech products, which is not contingent and
does not require proof of any additional facts.  Thus, resolution
of this action is directly related to MuscleTech's bankruptcy
case and could directly affect administration of the bankruptcy
estate.

Although state law issues clearly predominate this action, it does not involve any novel or difficult questions of state law that would be inappropriate for a federal court to address.  See Jazz Photo Corp., 2005 U.S. Dist. LEXIS 36396, at *20 (noting that state law issues dominated the malpractice action but the action did not involve any novel issues of state law); see also Balcor/Morristown LP, 181 B.R. at 793 (stating that "[t]he fact that a matter turns on state law cannot always control [because] [b]ankruptcy courts routinely hear matters of state law"). Moreover, this action was pending in state court for nearly three and a half years, yet no class was certified and discovery was not completed.  (GNC Remand Br., at ¶ 29.)  Thus, there is no indication that remand to state court would lead to a more efficient and expeditious conclusion to this matter, or that Abrams will be prejudiced if this action were to remain in federal court.  Therefore, discretionary abstention or equitable remand is not appropriate in this case.[7]

## IV.  Transfer

### A.  Transfer Standard

A "proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code] may be

---

[7] This Court acknowledges that Abrams's request for a jury trial is one factor supporting remand.  However, this Court concludes upon balancing the remaining factors, that permissive abstention and equitable remand are not appropriate here.

commenced in the district court in which such case is pending."

28 U.S.C. § 1409(a).  A district court may "transfer a case or

proceeding under [the Bankruptcy Code] to a district court for

another district, in the interest of justice or for the

convenience of the parties."  28 U.S.C. § 1412.  Although Section

1412 speaks only of proceedings "under" the Bankruptcy Code, it

is also applicable for determining whether a proceeding "related

to" a bankruptcy case may be transferred.  Mar. Elec. Co., Inc.

v. United Jersey Bank, No. 90-6057, 1992 U.S. App. LEXIS 5144, at

*11-*12 (3d Cir. Mar. 24, 1992) (explaining that where a

proceeding becomes "related to" a subsequently filed bankruptcy

case, the proper method for transfer to the bankruptcy court is

to seek a change of venue in the nonbankruptcy forum pursuant to

Section 1412 first); A. B. Real Estate, Inc. v. Bruno's, Inc. (In

re Bruno's Inc.), 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998)

(concluding that Section 1412 governs transfer of "related to"

bankruptcy proceedings because its language refers to the

Bankruptcy Code while Section 1404 refers only to a "civil

action"); see also Howard Brown Co. v. Reliance Ins. Co., 66 B.R.

480, 482 (E.D. Pa. 1986) (transferring proceeding "related to" a

bankruptcy case pursuant to Section 1412).  More generally,

Section 1404(a) permits a district court "[f]or the convenience

of parties and witnesses, in the interest of justice" to transfer

an action to another district "where it might have been brought."

21

28 U.S.C. § 1404(a). An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). The movant bears the burden under Section 1412 or Section 1404 of demonstrating that transfer is warranted. HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l, Inc.), 312 B.R. 44, 46 (Bankr. D. Del. 2004). However, the final decision on whether to transfer is committed to the district court's discretion. Larimi Ltd. v. Yes! Entm't Corp., 244 B.R. 56, 61 (D.N.J. 2000).

The determination of whether to transfer venue under Section 1412 or Section 1404 requires the same analysis. In re Emerson Radio Corp., 52 F.3d 50, 55 (3d Cir. 1995) ("[S]ection 1412 largely include[s] the same criteria for transfer of cases as section 1404(a), i.e., 'the interest of justice' or the 'convenience of the parties,' yet [it does] not include the limitation that a transfer may be made only to a district where the action might have been brought."); Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.), 296 B.R. 323, 325 (Bankr. D. Del. 2003) ("A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a)."). Additional factors to be considered when addressing a motion to transfer are: (1) the

22

plaintiff's choice of forum; (2) the defendant's forum

preference; (3) whether the underlying claim arose elsewhere; (4)

the convenience of the parties based on their relative physical

and financial condition; (5) the convenience of witnesses; (6)

the location of books and records; (7) the enforceability of any

judgment obtained by the plaintiff; (8) practical considerations

that could make trial easy, expeditious, or inexpensive; (9)

administrative difficulty resulting from court congestion; (10)

local interest in deciding local controversies; (11) the public

policies of each forum; and (12) the familiarity of the trial

judge with applicable law.  Larami Ltd., 244 B.R. at 61 (citing

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-880 (3d Cir.

1995)); In re Hechinger Inv. Co. of Del., Inc., 296 B.R. at 325.

Generally, the district where the bankruptcy case is pending is

the proper venue for all proceedings "related to" that bankruptcy

case.  Howard Brown Co., 66 B.R. at 482.

### B. Transfer as Applied to this Case

Transfer of this action to the Southern District of New York

is appropriate.  Venue is proper there because: (1) that is the

district where the MuscleTech bankruptcy case is pending; and (2)

this action is "related to" that bankruptcy case.  See 28 U.S.C.

§ 1409(a); Howard Brown Co., 66 B.R. at 482.  Moreover, transfer

of this action to the Southern District of New York would be in

the interest of justice.  GNC's right to indemnification from

23

MuscleTech is express and in no way contingent upon the
commencement of an additional action. Thus, any recovery Abrams
obtains against GNC will automatically increase MuscleTech's
liabilities and reduce the amount available for distribution to
MuscleTech's creditors. The Proof of Claim Order issued in the
CCAA proceeding, which directs all persons holding products
liability claims against GNC to file proofs of claim in
MuscleTech's bankruptcy case, supports the conclusion that this
action will impact MuscleTech's bankruptcy estate. (GNC Remand
Br., at ¶ 12.) Allowing the court in the Southern District of
New York to handle all matters affecting the MuscleTech
bankruptcy estate would ultimately promote the efficient
administration of the bankruptcy estate, and thus, the interest
of justice.

This Court also has already determined that this case will
not be remanded to the state court, Abrams's chosen forum, and
GNC seeks transfer to the Southern District of New York.
Further, although Abrams's claims against GNC originated from
GNC's marketing and sale of Steroid Hormone Products in New
Jersey, GNC was engaging in the same allegedly unlawful acts and
omissions across the United States; similar proceedings are
currently pending in Pennsylvania, Illinois, California, and
Florida. (GNC Remand Br., at ¶ 3.) Accordingly, the claims
underlying this action did not arise exclusively in New Jersey.

24

Neither party has addressed whether court congestion in the
Southern District of New York, strong local interest in deciding
this matter, or any public policies of this district or the
Southern District of New York weigh in favor of keeping this
action in this district or transferring it.  The familiarity of
the trial judge with applicable law also does not weigh heavily
for or against transfer, as district courts often interpret and
apply state law and this case does not involve any novel or
difficult applications of state law.  Further, the close
proximity of this Court to the Southern District of New York
makes the location-of-books-and-records factor neutral,
particularly because most of GNC's books and records will be
located at its principal office in Pittsburgh, Pennsylvania.  See
Larami Ltd., 244 B.R. at 62 (noting that due to the close
proximity of the District of New Jersey to the Bankruptcy Court
for the District of Delaware, factors four, five and six do not
suggest a preference for either district).  Similarly, Abrams, a
New Jersey resident, will not be significantly inconvenienced by
transfer of this action to the Manhattan location of the
Southern District of New York.

Practical considerations, however, indicate that transfer
would make the resolution of this action more expeditious by
eliminating any delays that would be caused by this Court needing
to familiarize itself with the relevant facts and circumstances

25

surrounding the sale of Steroid Hormone Products.  Transfer of
this case to the district where MuscleTech's bankruptcy case is
pending would promote judicial efficiency by establishing one
forum where all claims arising from the sale of MuscleTech
products can be addressed.  It will also enable the same court
overseeing the MuscleTech bankruptcy case, which may already be
familiar with the facts and circumstances surrounding its Steroid
Hormone Products, to determine this action.  Also, although no
potential witnesses have been specifically identified by either
party, it is likely that officers and employees of MuscleTech,
the manufacturer of one of the steroid hormone products
underlying Abrams's claims, could be called to testify in this
matter.  It would be more convenient for such potential witnesses
if this action were pending in the same district where the
MuscleTech bankruptcy case is currently pending.  Therefore,
balancing the various factors, this Court finds that the Southern
District of New York is a more appropriate forum.

CONCLUSION

The Court, for the reasons stated supra, will (1) grant
GNC's motion to transfer this action to the United States
District Court for the Southern District of New York, and (2)
deny Abrams's cross motion to remand this action to New Jersey
Superior Court.  The Court will issue an appropriate order and
judgment.


                              s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge


27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
                                         :
HARRY RODRIGUEZ,                         :
                                         :
                 Plaintiff,              :
                                         :        06 Civ. 2987 (JSR)
          -v-                            :
                                         :        ORDER
GENERAL NUTRITION COMPANIES, INC.,       :
                                         :
                 Defendant.              :
                                         :
--------------------------------------- x

JED S. RAKOFF, U.S.D.J.

        Plaintiff's motion to remand the above-captioned case back to

the state court from which it was removed is hereby denied.  The

Clerk is directed to close documents 3 and 4.

        SO ORDERED.

                                    _____
                                        JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        February 22, 2007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-23-07

1

James V. Marks (JM 6257)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
(212) 513-3200

Attorneys for Defendant,
GENERAL NUTRITION COMPANIES, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SHAWN BROWN, individually and on behalf of all
others similarly situated,

        Plaintiffs,

                                       1:07-cv-06356-UA

v.

GENERAL NUTRITION COMPANIES, INC.,

        Defendant.
------------------------------------------------------------------------x

### ORDER DENYING MOTION TO REMAND

      After considering the filings on record, including Plaintiff, Shawn Brown's, Luke

Smith's, Ozan Cirak's, and Thomas Hannon's ("Plaintiffs) Motion to Remand Motion to

Remand and General Nutrition Companies, Inc. ("GNC") Memorandum in Opposition to

Plaintiffs' Second Motion to Remand, the court finds that the motion should be denied. It is,

therefore, ORDERED as follows:

      Plaintiffs' Motion to Remand is denied.

      Signed this _____ day of _____ 2007.


                               _____

                               UNITED STATES DISTRICT JUDGE